**UNITED STATES of America**

v.

**The H. E. KOONTZ CREAMERY, INC.**

**Crim. No. 26128.**

United States District Court
D. Maryland.

Aug. 4, 1964.

Lewis A. Rivlin, Sinclair Gearing, Milton A. Kallis and Margaret H. Brass, Attys., Dept. of Justice, Washington, D. C., Thomas J. Kenney, U. S. Atty. for Dist. of Maryland, for the Government.

W. Lee Harrison and Michael Paul Smith, Towson, Md., for H. E. Koontz Creamery, Inc.

John T. Chadwell, David L. Aufderstrasse, James E. Hastings, Chicago, Ill., J. Cookman Boyd, Jr., and Henry M. Decker, Jr., Chicago, Ill., for National Dairy Products Corp., and for John M. Lescure.

Ambler H. Moss and David R. Owen, Baltimore, Md., for Green Spring Dairy, Inc.

Nathan Patz, Baltimore, Md., for Cloverland Farms Dairy, Inc. and Royal Farms Dairy, Inc.

M. William Adelson, Baltimore, Md., for Will's Dairy, Inc.

John S. McDaniel, Jr., and Richard F. Cadigan, Baltimore, Md., for Wilton Farm Dairy, Inc.

Robert D. Klages and Robert F. Skutch, Jr., Baltimore, Md., for High's of Baltimore, Inc., Clyde Shugart and C. Y. Stephens.

Robert E. Coughlan, Jr., and Alva P. Weaver, III, Baltimore, Md., for Milk Distributors Ass'n, Inc.

Z. Townsend Parks, Jr., and H. Emslie Parks, Baltimore, Md., for William S. Hebb.

Michael Paul Smith and Richard C. Murray, Towson, Md., for George C. Oursler.

G. C. A. Anderson and Ward B. Coe, Jr., Baltimore, Md., for James J. Ward, Sr. and James J. Ward, Jr.

R. DORSEY WATKINS, District Judge.

On December 20, 1962, the Grand Jury of the United States District Court for the District of Maryland returned an indictment charging all the captioned defendants with violation of United States Code, Title 15, section 1. All defendants were arraigned, and pleaded not guilty. Thereafter various motions were filed on behalf of some of the defendants, including motions for bill of particulars, and to inspect certain Grand Jury testimony and documents. After disposition of these matters, some without prejudice, defendants Koontz, National Dairy, Green Spring, Cloverland, Royal, Will's, Lescure, Hebb, Oursler and Ward, Jr. renewed motions, previously denied without prejudice, to dismiss the indictment on the ground of double jeopardy; and further moved the court "for a separate trial or hearing of the issues raised by such motion before the court without a jury, such trial to be held prior to the trial of the general issue * * * " The same defendants, with the addition of Ward, Sr., also renewed their motions, previously denied without prejudice, to dismiss the indictment on the ground of lack of due process. The moving parties also further moved the court "for a separate hearing of the issues raised by such motion before the Court without a jury prior to the trial of the general issue."

In conjunction with the due process motion, the moving defendants in such motion renewed their motion, previously denied without prejudice, to inspect and copy certain portions of the Grand Jury proceedings in a predecessor case.

The various motions were elaborately briefed, and were set for hearing on June 5, 1964.[1] At that hearing, it was represented to the court that C. Y. Stephens had died, and an order of dismissal was entered as to him.

Pleas of nolo contendere were tendered on behalf of Cloverland and Royal, which also withdrew from the motions to dismiss for double jeopardy, and lack of due process.[2] Counsel for the Department of Justice stated that the Department had no objection to the acceptance of the pleas.[3]

A plea of guilty was tendered on behalf of Green Spring; a plea of nolo

---

1. High's, Shugart and Stephens moved for a severance and separate trial. The court has postponed ruling on said motion pending disposition of the double jeopardy and due process motions.

 Milk Distributors Association, Incorporated, was represented by counsel who appeared specially to enter a plea on behalf of the Association. The Association has taken no further part in these proceedings, and it has been represented to the court, without challenge, that the Association has no funds.

Wilton Farm Dairy, Incorporated had entered a plea of guilty.

2. Counsel for Cloverland and Royal stated categorically that those companies would not withdraw their tender of nolo contendere, regardless of the court's disposition of the double jeopardy and due process motions.

3. Primarily on the ground that the active head of the corporations had died, and "these corporations have passed into new hands * * * "

contendere on behalf of Ward, Sr.; and the Government presented an order of dismissal as to Ward, Jr. Some interrogation led the court to decline the guilty plea, and the dismissal at that time, without prejudice to their renewal.

As to the three tenders of nolo contendere, the court took the position that without an outline of what the Government contended the facts to be, as to such defendants and the whole case, and the claimed relative involvement of all the defendants, it could not determine whether or not the nolo pleas should be accepted.[4]

Since it appeared that certain of the defendants had reached agreements with the Government, subject to the court's approval, the court undertook to withhold ruling on the double jeopardy and due process motions until all defendants had had a reasonable opportunity to endeavor to discuss proposed pleas with the Government. Such time has elapsed, and the court has not been advised on any progress.

### Background.

The defendants, other than High's, Stephens, Shugart and Ward, Sr., had previously been indicted in Criminal No. 25542, superseded by an information, Criminal No. 25658, on charges[5] of a conspiracy beginning prior to 1946 and continuing to the Fall of 1957, and a conspiracy from the Spring or early Summer of 1959, to the end of 1959, with respect to rigging of bids for so-called "school milk." The defendants ultimately pleaded nolo contendere, which pleas were accepted over the Government's objections and fines were imposed.

The present indictment charges the defendants, other than Oursler, Stephens, Shugart and High's with a conspiracy

beginning some time prior to 1956 and continuing into the late fall of 1960, and the joinder of said conspiracy by Oursler sometime prior to October 1, 1957 and the joinder by Stephens, Shugart and High's sometime prior to December 1, 1958, to suppress and eliminate competition in the sale of milk and milk products "(other than sales to institutional customers purchasing by competitive bidding)"—which would exclude "school milk." The conspiracy alleged in the current indictment has, for convenience, been called the "general price-fixing conspiracy."

Although the current indictment has been meticulously drawn expressly to exclude school milk, and although the dates of the alleged school milk conspiracies and the general price-fixing conspiracy do not coincide, and although[6] three defendants not alleged as participants in the school milk conspiracy are alleged to have participated during the latter part of the general price-fixing conspiracy, the moving defendants contend (a) as to double jeopardy, that the school milk and general price fixing conspiracies are really part and parcel of one conspiracy, the Government attempting to "fragmentize" the one conspiracy; and (b) as to due process, that even if the school milk and general price fixing conspiracies could be separately indictable offenses, they are so interrelated that to bring separate prosecutions is contrary to a "policy dictated by considerations both of fairness to defendants and of efficient and orderly law enforcement" (Petite v. United States, 1960, 361 U.S. 529, 530, 80 S.Ct. 450, 451, 4 L.Ed.2d 490), and would be a denial of due process.

The moving defendants contend that these defenses should be heard non-jury in advance of trial of the general issue;

4. Wilton indicated that if several nolo contendere pleas were accepted, it might wish to withdraw its guilty plea, and make a similar tender of nolo.

5. Not all defendants were charged in both counts, but each was charged in at least one.

6. The repetition of "although" is intended only to point out the facial differences, and otherwise is intended to be a colorless word.

that this is permissible and expedient. The Government contends that a jury trial of these issues, by the same jury empanelled to try the criminal charge,[7] is mandatory and that if there were an element of discretion, it should be exercised in favor of a "unitary" trial.

### Double Jeopardy.

#### The Law

Moving defendants cite F.R.Cr.P. 12 (b) (4) in support of their motions. To this court, Rule 12(b) (1) is even more apt. These sections read as follows:

"(b) Defenses and Objections Which May be Raised.

"(1) Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

$*$ $*$ $*$ $*$ $*$ $*$

"(4) Hearing on Motion. A motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue. An issue of fact shall be tried by a jury if a jury trial is required under the Constitution or an act of Congress. All other issues of fact shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct."

The moving defendants also cite the provision of the Fifth Amendment that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb $*$ $*$ $*$."

The Government cites the provisions of section 2 of Article III of the Constitution that:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury $*$ $*$ $*$."

While the cases in the state courts are in conflict as to whether the defense of double jeopardy must be tried by a jury[8] the parties agree there is no controlling federal decision on this specific point. Before considering the authorities relied upon as supporting the divergent views, the court finds it necessary to refer to its point of fundamental departure from the analysis urged by the Government. The Government's argument is: conspiracy is a crime; the provision that all crimes shall be tried by a jury is modified only by the waiver provision recognized in Patton v. United States, 1930, 281 U.S. 276, 298, 312, 50 S.Ct. 253, 74 L.Ed. 854 embodied in F.R.Cr.P. 23(a) under which cases required to be tried by a jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Government; that the Government has expressly refused to consent; therefore, there must be a jury trial. While abstractly unassailable, it is inapplicable. The hearing sought by the defendants is not a trial;[9] it is a hearing to determine whether or not the moving defendants must stand trial. In such a hearing, the guilt or innocence of the moving defendants is immaterial; the only question is whether they have previously been placed in jeopardy for the offense alleged in the instant indictment.

In a trial of the conspiracy charge (the substantive crime) the moving de-

7. While the Government insists that the question of double jeopardy and the general issue should be tried unitarily to the same jury, and that the jury should be instructed first to pass upon double jeopardy and if the finding is adverse to defendants, then consider guilt or innocence, it seems to recognize that the court could first require the case relating to double jeopardy to be presented to the jury in full, without the introduction of evidence relating only to guilt

or innocence; and then, if the finding is adverse to defendants, have the general issue tried.

8. The result is often controlled by constitutional provisions different from those quoted above.

9. In the renewed motion on double jeopardy, the moving defendants asked for a "trial or hearing"; only a "hearing" is sought on the due process motion.

fendants would be placed in jeopardy, the verdict would be guilty or not guilty; and if guilty, they would be subject to criminal sanctions. The hearing of the double jeopardy motion would not place the moving defendants in jeopardy; if the motion were decided adversely to them, they could be tried for the alleged crime; if the motion were decided in their favor, the Government could appeal, and if it did so successfully, the moving defendants could then be tried for conspiracy.

This is recognized by the Government. In its Brief, it says: [10]

"If the double jeopardy defense is tried in advance of the rest of the case, the finder of fact in the earlier part of the proceeding will not have the power to convict the accused. Defendants will not, therefore, have been jeopardized. In the event that the defendants making the motion are successful, the Government should be presumed to want to pursue its appeal. An appeal may be taken from a judgment sustaining a plea in bar when the defendant has not been put in jeopardy. 18 U.S.C. § 3731. Cf. State v. Ellsworth, 131 N.C. 773, 42 S.E. 699 (1909)."

If a hearing on the motion were had, the decision would not be "Guilty" or "Not Guilty", but "Motion Granted" (the indictment will be dismissed; you do not have to stand trial); or "Motion Denied" (you will have to stand trial).

If "twice put in jeopardy" meant only that the accused had a good defense *after* trial on the merits, instead of the right to avoid a trial on the merits, he would be subjected to harassment,[11] expenses, and the risk of a miscarriage of justice. The decisions of the Supreme Court have made it abundantly clear that the purpose of the double jeopardy rule (common law or

constitutional) was to forbid a *second trial* for the same offense. In Green v. United States, 1957, 355 U.S. 184, pages 187–188, 78 S.Ct. 221, page 223, 2 L.Ed.2d 199 the court said:

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. In his Commentaries, which greatly influenced the generation that adopted the Constitution, Blackstone recorded:

" ' * * * the plea of *autrefoits acquit*, or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.' [4]

"4. Blackstone's Commentaries 335.

"Substantially the same view was taken by this Court in Ex parte Lange, 18 Wall. 163, at 169 [21 L. Ed. 872]:

" 'The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.' [5]

"5. And see United States v. Ball, 163 U.S. 662, 669 [16 S.Ct. 1192, 41 L.Ed. 300]:

" 'The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.' "

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurispru-

---

10. Memorandum in Opposition of Motion of Certain Defendants for a Separate, Non-jury, Trial on their Double Jeopardy Defense, page 4.

11. In theory, if a defendant has to stand trial, and await a jury verdict, on instructions, as to the nature of the defense, there would be nothing to prevent a third or fourth trial, etc., with (hopefully) a successful outcome to each.

dence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

Repeated references to barring a second trial or that the defendant "could not be retried" are found throughout the opinion (page 188, four times; page 191, three times; pages 192, 193, 198).[12]

■ How then is a second trial to be barred, how is it to be made certain that one once in jeopardy shall not be retried, except by a hearing on a motion seeking to bar the second trial, to prevent the defendant from being retried; certainly not by subjecting the defendant to a second trial to see if he *should* be tried a second time.

The motion here presented is preliminary to a trial; it does not affect the moving parties' guilt or innocence; it affects only the court's right to hold them for trial. That such a determination (although not in a double jeopardy case) does not require a jury trial, is shown by cases such as Ford v. United States, 1927, 273 U.S. 593, 605–606, 47 S.Ct. 531, 71 L.Ed. 793; Dennis v. United States, 1951, 341 U.S. 494, 512–513, 71 S.Ct. 857, 95 L.Ed. 1137; reh. den. 1952, 342 U.S. 842, 72 S.Ct. 20, 96 L. Ed. 636.[13]

The Government contends that at common law issues as to double jeopardy were tried by the general issue jury, citing 2 Hale, Pleas of the Crown, (1st Am.Ed.1847) 254–255 [14] and 4 Blackstone's Commentaries, (1900) 338.[15] As to these it should be noted that the

12. The four dissenting justices did not disagree with this principle (see pages 200, 202) but were of the opinion that Green had not been placed in double jeopardy.

13. Short v. United States, 4 Cir. 1937, 91 F.2d 614 contains general language as to the submission of a double jeopardy plea to the jury. The moving defendants herein state (Memorandum, pages 5–6 that the record shows that: "On appeal the defendants contended that the trial court should have decided the issue in their favor as a matter of law, but if it did not so decide, should have at least submitted the issue to the jury."

This statement has not been challenged. Accordingly, the Court of Appeals was not required to pass upon the issue here presented.

Parenthetically, it should be noted that the position taken by the appellants in the Short case is similar to the procedure regularly followed in this court with respect to the voluntary nature of confessions. The matter is first heard by the court. If the confession is found to be involuntary, it is excluded. If the court does not find it to be involuntary as a matter of law, the question of whether in fact it was voluntary is submitted to the jury, under appropriate instructions.

14. "To conclude this whole matter of *auterfoits acquit, convict* or *attaint*

these things are to be observed. 1. The party that pleads the record must plead it specially setting forth the record. 2. He must either shew the record *sub pede sigilli*, or have the record removed into the court, where it is pleaded by *certiorari*, or if it be a record of the same court must vouch the term, year and roll, for the record is part of his plea. 3. He must make averments, as the case shall require, as that he is the same person, that it is the same offense. 4. No issue shall be taken upon the plea of *nul tiel record*, because it is pleaded in court, but the king's attorney may have oyer of the record. 5. The averments are issuable. 6. If issue be taken upon them they shall be tried by the jury, that is returned to try the prisoner by the statute of *22 H.8 cap. 14.* 7. He, that pleads these pleas, must also plead over *not guilty* to the felony, for if the pleas be adjudged against him, yet he shall be tried upon the *not guilty*."

15. "Before I conclude this head of special pleas in bar it will be necessary once more to observe that though in civil action, when a man has his election what pleas to make, he is concluded by that plea, * * * quia interest reipublicae ut sit finis litium; yet in criminal prosecution in favorem vitae, as well upon appeal as indictment, when a prisoner's plea in bar is found against him upon

practice reported by Hale is statutory in origin; and the quotation from Blackstone that when a prisoner's plea in bar [16] "is found against him upon issue tried by a jury, or *against him in point of law by the court*," (italics supplied), he may plead over, is certainly consistent with trial by the court.

The Government cites, in support of its position Short v. United States, 4 Cir. 1937, 91 F.2d 614 (discussed in footnote 13); Ferracane v. United States, 7 Cir. 1928, 29 F.2d 961; Hunnicutt v. United States, 5 Cir. 1945, 149 F.2d 888, cert. den. 1945, 326 U.S. 757, 66 S.Ct. 99, 90 L.Ed. 455; and Thompson v. United States, 1874, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146. In none of these did it appear that either side had requested a non-jury hearing of the motion, and none holds that a jury trial of the motion was required. Hunnicutt definitely was not a "unitary" hearing, and Thompson apparently was not. See 155 U.S. at 274, 15 S.Ct. 73.

The Government also cites the well-established rule that the defense of limitations must be raised under the general issue, and not by a special plea in bar. United States v. Kissel, 1910, 218 U.S. 601, 609–610, 31 S.Ct. 124, 54 L.Ed. 1168; United States v. Barber, 1911, 219 U.S. 72, 77–78, 31 S.Ct. 209, 55 L.Ed. 99.

To the alleged analogy of limitations to double jeopardy there are at least two answers.

First, the basic Kissel opinion, on limitations, was written by Mr. Justice Holmes. The same justice wrote the opinion in United States v. Oppenheimer, 1916, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. In the latter case the defendant filed a "motion to quash" (a plea in bar, 242 U.S. at 86, 37 S.Ct. 68) his current indictment on the ground that the same offense had been charged in a previous indictment which had (er-roneously) been held barred by limitations. The trial court ordered the current indictment quashed and discharged the defendant without day. In affirming the judgment, the court said (pages 87–88, 37 S.Ct. page 69):

"Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defendant upon the ground that the prosecution is barred goes to his liability as a matter of substantive law, and one judgment that he is free as matter of substantive law is as good as another. A plea of the statute of limitations is a plea to the merits, United States v. Barber, 219 U.S. 72, 78 [31 S. Ct. 209], and however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution. We may adopt in its application to this case the statement of a judge of great experience in the criminal law: 'Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, that adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offence. * * * In this respect the criminal law is in unison with that which prevails in civil proceedings.' Hawkins, J., in The Queen v. Miles, L.R. 24 Q.B.Div. 423, 431. The finality of a previous adjudication as to the matters determined by it, is the ground of decision in Com. v. Evans, 101 Mass. 25, the criminal and the civil law agreeing, as Mr. Justice Hawkins says. Com. v. Ellis, 160 Mass. 165, 35 N.E. 773; Brittain v. Kinnaird, 1 Brod. & B. 432. Seemingly the same view was taken in Frank v. Mangum, 237 U.S. 309,

---

issue tried by a jury, or against him in point of law by the court, still he shall not be concluded or convicted thereon, but shall have judgment of respondeat

ouster, and may plead over to the felony the general issue, not guilty."

16. A plea of double jeopardy is a plea in bar. 4 Blackstone's Commentaries 335.

334 [35 S.Ct. 582, 59 L.Ed. 969], as it was also in Coffey v. United States, 116 U.S. 436, 445 [6 S.Ct. 437, 29 L.Ed. 684].

"The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice (Jeter v. Hewitt, 22 How. 352, 364 [16 L.Ed. 345]), in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time."

The case is a recognition of the propriety of raising double jeopardy by a special plea, which plea was of course heard by a judge without a jury.

Secondly, the claimed analogy between the statute of limitations and double jeopardy is unsound. The former is a statutory right; the latter a constitutional one. As to limitations, the defendant presumably has never stood trial; in double jeopardy, if he has not been tried, he has been subjected to the risk of conviction. Also, as a practical matter, the prejudicial effect upon a "unitary" jury of a plea of limitations, which is consistent with the innocence of a defendant, would not be nearly so great as would be the case of a plea of double jeopardy, where as in the instant case to sustain the defense, the defendant would have to admit his guilt,[17] and having done so, try to show that his previous unlawful conduct was the same as in the instant case.

Finally, the Government cites Heike v. United States, 1910, 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821, as authority for the proposition that "an accused shall not be *jeopardized* by a second trial, but that does not mean that he shall not stand a second trial." (Government's emphasis, Brief on double jeopardy, page 16).

Heike had been indicted for alleged violation of the customs laws of the United States in connection with the fraudulent importation of sugar. He "filed a special plea in bar claiming immunity from prosecution" because of testimony given by him before the grand jury in matters concerning the prosecution against him, and had thereby become immune. The Government filed a replication, and the issues thus raised were brought to trial before a jury. At the conclusion of the testimony the court instructed the jury to find the issues joined in favor of the Government. Heike was granted leave to plead over; he entered a plea of not guilty; and the case was set for trial at a later date. Judgment on the verdict as to the plea in bar was later entered nunc pro tunc. A writ of error was allowed by one of the Supreme Court Justices; a motion to vacate was denied; the Government then moved to dismiss the writ of error on the ground that the judgment in question was not a final one; and the motion was sustained and the writ of error dismissed.

Heike contended "that he was deprived of the constitutional right of trial by jury in the direction by the court that the jury find a verdict against him upon his plea in bar." (217 U.S. at page 428,

17. The court of course recognizes that a plea of nolo contendere is not an express admission of guilt, but a "no contest" as to the charges of the Government. In the absence of contest the allegations of the indictment, if sufficient at law, will result in the entry of a judgment against the defendant. However, in a plea of double jeopardy, based upon a previous nolo contendere plea, a defendant would have to admit that the current indictment charged the commission of a crime (or else defendant would move to quash it); and that the pre-

viously charged offense was, or offenses were, similar; and a jury might well feel that an equation of the present to the former was an admission, or an assertion, that the previous conduct was also criminal. Whether they so denominated it, the jury could not be criticized for thinking that things equal to the same thing are equal to each other.

Whether the same detriment or prejudice would result to a defendant previously acquitted, is interesting, but not here relevant.

30 S.Ct. at page 540. In holding that there had been no final judgment, and hence there could be no appeal, the court said (217 U.S. at pages 429–430, 30 S.Ct. at page 541):

"* * * If we apply the definition herein contained of a final judgment or decree, it appears certain that the judgment of *respondeat ouster*, leaving the case with issue joined upon the plea of not guilty, does not dispose of the whole matter litigated in this proceeding, leaving nothing to be done except the ministerial act of executing the judgment. The thing litigated in this case is the right to convict the accused of the crime charged in the indictment. Certainly that issue has not been disposed of, much less has a final order been made concerning it, leaving nothing but an execution of it yet undone. The defendant was indicted for the crime alleged, and, being apprehended, he had a right to raise an issue of law upon the indictment by demurrer, to plead in bar, or to plead the general issue. He chose to plead in bar immunity from prosecution by reason of the statute referred to. That issue was, by direction of the court, whether properly or improperly, held against him, and the verdict of the jury and the judgment of *respondeat ouster* duly entered. At the common law upon the failure of such plea in a case of misdemeanor, it was usual at once to sentence the defendant as upon conviction of guilt of the offense charged. In cases of felony it was usual to permit a plea of not guilty after judgment over. In the case at bar, the record shows after the return of the verdict, the plaintiff in error's counsel asked to be permitted to plead, and was allowed that privilege. As the case now stands, upon the plea of not guilty, upon which the issue raised must be tried to a jury, certainly the whole matter has not been disposed of. * * *"

The case was one in which a plea in bar, to be decided before, and separately from, the general issue, was recognized as the appropriate method of raising the defense;[18] there was no intimation that the plea and the general issue must be heard by the same jury; and there is no comment upon the claim of denial of a constitutional right to jury trial.

■ In summary, the court finds no requirement that a motion to dismiss an indictment on the ground of double jeopardy must be heard in a "unitary" trial of the general issue; or that such motion must be heard by the general issue jury; or that it must be heard by a jury.

### The Practicalities.

The Government contends that there are many practical reasons why, even if the law did not require a single unified trial by jury, the court in the exercise of its discretion should so direct. They are stated to be:

1. If there were a separate trial, the major benefits of a nolo plea would be lost to a defendant who might be an appropriate candidate for such a plea. This is based upon the Government's interpretation of 15 U.S.C.A. § 16(a), which the Government reads as permitting the use of a nolo contendere plea, offered and received, after the taking of any testimony, as prima facie evidence in a treble damage case. Whether the Government is right or wrong need not be determined in this case.[19] These mov-

18. This court of course realizes that F.R. Cr.P. 12(a) abolishes all pleas except not guilty, guilty and nolo contendere. However, it provides that defenses raised before trial which heretofore could have been raised by plea, may be raised by motion, "as provided in these rules." Rule 12(b) (1), above quoted, permits any defense capable of trial without trial of the general issue, to be raised by motion. A plea in bar of double jeopardy, or immunity, would be embraced by these provisions.

19. Is a plea of nolo contendere a "consent judgment"? Would testimony on the double jeopardy issue be "testimony" within the meaning of section 16(a)?

ing defendants have moved for separate "trial" or hearing of this motion, and if such hearing is granted, will have to take the consequences. Moreover, from the standpoint of the effect of a nolo contendere plea in a treble damage case, it is not seen how its benefits would be any greater, or less, if a unitary trial, rather than a separate hearing, were had.

2. An "unsatisfactory record" might be made. This is based upon speculation of how far defendants would go in their case in chief, and how far the Government would, or should, go in rebuttal, in view of the Government's desire not to tip its hand on the alleged general price-fixing conspiracy. There would seem to be here involved no risk different from the one invariably encountered in a choice of trial tactics.

3. A single proceeding would eliminate problems of appeal. What apparently is meant is that if the moving defendants were successful, the Government would want to appeal, and the non-moving defendants might insist upon trial. For reasons which will shortly be discussed, the court would in any event be strongly inclined to sever, and give a separate and prior trial, to High's and Shugart.

4. A unitary trial would "avoid difficult problems and do substantial justice." Just what is meant is not clear. It seems to mean that if the defendants would follow the trial procedure spelled out in some detail in the Government's brief, it would lead to an orderly, and from the Government's pretrial theories, to a satisfactory solution.

Against these points, made by the Government, the court feels that there are two factors, of far greater significance, which lead to a contrary conclusion. With the greatest respect for the ability of the trial judge (who may or may not be the writer of this opinion) properly to instruct, with the aid of counsel, it must be remembered that in a unitary trial a jury would be asked to:

(a) Recognize that the burden upon the defendants in the double jeopardy aspect would be only that of proof by a preponderance of the evidence, while the burden on the Government on the question of guilt would be proof beyond a reasonable doubt.

(b) Realize that for the double jeopardy aspect, the defendants would have to prove that what they are charged with in this case was the same as, or part of the same, conspiracies to which they had previously pleaded nolo contendere and for which they had been fined; but if the jury did find that the presently charged conspiracy was different from the previous ones, they are not to convict because of previous guilt, even although the moving defendants have just tried, unsuccessfully, to say— "Guilty before, guilty now, but you can't hold us because they are the same crimes."

To require the defendants, before the same jury, to urge their guilt as constituting double jeopardy, and so a defense; but if unsuccessful, to face the jury with a "We were wrong; we said we were guilty; now we say we are not" would seriously impair, if not completely destroy the value of a double jeopardy defense in a case such as this.

Especially would it be unfair to subject High's and Shugart to the risks of such involvement. High's and Shugart were not charged in the school milk conspiracies, but they almost certainly would be prejudiced by being joined with other defendants who must prove their involvement in the school milk conspiracies and urge that their presently alleged conspiracy is the same; if so, then they will go free; but High's and Shugart, though not involved in the school milk conspiracies aspect, if found involved in the general price-fixing conspiracy, alone

20. The court withheld formal ruling on the motion of High's and Shugart for a severance and earlier trial, because of its

possible effect upon the status of High's and Shugart with respect to the motion of the moving defendants.

322

would be held. For this reason the court has intimated its strong inclination [20] to grant a separate, and prior, trial to them, if the motions to hear the double jeopardy issues non-jury, and before the trial of the general issue, were to be denied.

For the reasons above set forth, the court grants the motions of the moving defendants for a separate hearing of the issues raised by the double jeopardy motions, before the court without a jury, prior to the trial of the general issue.

### Due Process.

The moving defendants [21] in support of their motion to dismiss the indictment on grounds of lack of due process alleged that the processes and procedures culminating in the return of the indictment herein constitute an abuse of due process because (1) the Government "failed to take the necessary and possible steps to place before the Court, so that the Court could consider at one time at one trial or hearing, all the various charges contained in the indictment herein and in the school milk amended information," and (2) the grand jury that returned the school milk indictment "had sufficiently investigated general milk pricing practices to permit an intelligent judgment on the part of the Government" [22] whether (a) to continue its investigation until such time as it felt warranted in seeking an indictment or filing an information [23] "covering all charges it intended to make concerning this general course of conduct", or (b) if it desired to act at once, to seek an indictment or

file an information [24] "covering all charges it felt warranted in making at that time and foregoing all other charges pertaining to that course of conduct."

The Government properly points out that the moving defendants do not make it clear whether the element to which they object is that (a) the same conspiracy is fragmented; (b) different conspiracies growing out of the same general course of conduct are being separately prosecuted; or (c) the Government knew of the general price-fixing conspiracy when the indictment was returned, or the information filed, on the two alleged school milk conspiracies.[25]

At the hearing the moving defendants necessarily admitted that if there were a "fragmentation" of a previous conspiracy the proper approach was through the motion to dismiss on the ground of double jeopardy. They elected point (c) as their ground for relief,[26] although the authorities urged in support of their motion would seem to go to point (b), if to anything.

 Assuming only for purposes of the disposition of this motion that the Government *did*, at the time the previous indictment and/or information were filed, have sufficient information to have sought prosecution of the moving defendants on each of the school milk price conspiracies and the general price-fixing conspiracy (and of course assuming that they constituted separate crimes) the court sees no denial of due process in prosecuting the moving defendants separately for two crimes; or for two

21. Ward, Sr. is named as a moving defendant. He was not a defendant in the previous indictment or information, and clearly was not in a position to urge this defense. His counsel so conceded at the hearing, and his name was withdrawn from the motion.

22. There is an apparent gratuitous assumption on the part of the moving defendants that a grand jury will necessarily follow the judgment of the Government (even if "intelligent") should the grand jury's judgment differ. No basis for such an assumption, abstract-

ly or with respect to the particular case, appears.

23. Again, the moving defendants ignore their right to require an indictment.

24. See footnotes 22 and 23.

25. Element (c) would involve a factual question, if it were a proper field for inquiry. The Government has denied that it had knowledge sufficient to justify seeking an indictment for the alleged general price-fixing conspiracy at the time the previous indictment and/or information were filed.

26. Transcript, June 5, 1964, page 130.

crimes in one action, and the third in another.[27]

The actual argument of the moving defendants, despite their purported election at the hearing, is that separate prosecutions of offenses stemming from the same general course of conduct violate the due process clause of the Fifth Amendment. It might be sufficient to dismiss this contention simply on the ground that "the same general course of conduct" may well involve a series of separate offenses. A general course of mail fraud, bank robbery or car theft does not prevent each separate act from being a crime; and the same is true as to separate conspiracies.

Moreover, the authorities relied upon by the moving defendants, Petite v. United States, 1960, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490, and United States v. Marakar, 1962, 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803, are not persuasive. They could perhaps readily be distinguished on the grounds that in each of these cases the acts involved did not constitute a "general course of conduct" and were quite restricted as to time, place, parties and subject matter.[28] Whatever may be the implications of the willingness of a majority of the Supreme Court to accept a "concession" by the Solicitor General of the inappropriateness of procedure judged by that officer to be inconsistent with "fairness to defendants and * * * efficient and orderly law enforcement", in this case (a) there has been no such "concession", but a vigorous insistence that the instant prosecution is proper; and (b) the court finds no basis for an independent conclusion that there is (from a due process standpoint) any unfairness to the moving defendants, or any inconsistency with orderly law enforcement.

The motions of defendants to dismiss the indictment on the ground that this prosecution violates the due process clause of the Fifth Amendment are denied with prejudice.

Inspection of Grand Jury Minutes.

The motions to inspect minutes of the Grand Jury are incident to, and intended to be in support of, the motions to dismiss the indictment for abuse of due process. As the court has denied the motions to dismiss the indictment on this ground, the motions to inspect are really moot, but are hereby formally denied.

---

27. If, in fact, there were two school milk price conspiracies and one general price-fixing conspiracy, the moving defendants could properly have been prosecuted in three suits. The original indictment and information contained two counts, each for an alleged different school milk price conspiracy. Why due process was met by charging them with two conspiracies, but is subverted by a separate indictment on an alleged third conspiracy, is not apparent. What is the real difference between a three count indictment, or three one-count indictments, if in fact three separate crimes are involved?

28. Clearly, as to Petite, D.C.Md.1957, 147 F.Supp. 791; affirmed 4 Cir. 1959, 262 F. 2d 788, 791, the reasoning of Chief Judge Thomsen, and of the Fourth Circuit, is entirely persuasive and satisfactory to this judge.