**UNITED STATES of America**

v.

**Alvin E. YOUNG et al.,**

**Appeal of Robert GREEN.**

**No. 73-2044.**

United States Court of Appeals, Third Circuit.

Argued April 16, 1974.

Final Submission July 26, 1974.

Decided Oct. 10, 1974.

Jack M. Myers, Philadelphia, Pa., for appellant.

Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appellant, Robert Green, was convicted in a consolidated trial of conspiring to possess with intent to distribute and to distribute heroin in violation of 21 U.S.C. § 841. Green's four co-defendants were also convicted of this conspiracy, as well as various other violations of the Narcotics law.[1]

The appeals of Green's co-defendants were adjudicated in United States v. Harris, 498 F.2d 1164 (3d Cir., 1974).[2] To the extent Robert Green relies by reference upon those issues raised by his co-defendants, we reject them for the reasons stated by Judge Rosenn in that opinion.[3] The only remaining significant issue raised by Green on this appeal is that of double jeopardy.

The gravamen of this assertion of former jeopardy is an earlier indictment, No. 72–552, filed October 5, 1972, to which Green pleaded guilty on November 29, 1972. This indictment alleged a conspiracy among Robert Green, Oscar Peters, George Glover and others, unknown to the Grand Jury, to distribute 11 bundles of heroin, on or about the 20th day of September, 1972, in Philadelphia, and elsewhere, in violation of 21 U.S.C. § 841. Additionally, Green was charged in two counts with knowing and intentional use of a communications facility, *i. e.*, a telephone, in aiding an attempt to distribute 11 bundles of heroin in violation of 21 U.S.C. § 843(b). The overt acts alleged in connection with this indictment related to activities taking place on or about September 20, 1972, in Philadelphia.[4]

The indictment involved in the controversy *sub judice*, No. 73–193, filed April 3, 1973, charges that Robert Green con-

---

1. The charges were brought under two indictments; viz., 73–45 and 73–193, and were tried together. Green was charged only in count 1 of 73–193.

2. The trial of co-defendant James H. Simmons was severed and he is not before us on this appeal.

3. The facts of this case were extensively reviewed in United States v. Harris, *supra*, and in the opinion of the District Court denying defendants' motions for post-trial relief, 368 F.Supp. 697 (E.D.Pa.1973). We reiterate those facts only to the extent necessary to our disposition of this case.

4. The overt acts included storage of the heroin at the residence of Oscar Peters, various telephone calls between the conspirators in furtherance of the attempted distribution, and travel to a meeting place for the purpose of receiving delivery of the heroin. Robert Green was mentioned in two of the five enumerated overt acts. The first involved a telephone call to Peters inquiring as to the amount of heroin he had and the second, a telephone call informing Peters that he was sending Glover to pick up eleven bundles for which the latter had paid.

spired with Alvin E. Young, Harvey Johnson, Charles Harris, Harold E. Young, James H. Simmons, Linda Johnson, and other persons whose names were unknown to the Grand Jury, to possess with intent to distribute, and to distribute quantities of heroin in violation of 21 U.S.C. § 841. This count, the only one involving Robert Green, alleges a major conspiracy extending in duration from October 30, 1970 to April 3, 1973, which included purchasing of heroin in New York City, transporting the narcotics to Philadelphia, adulterating and packaging the heroin so obtained, and distributing the product.

The enumerated overt acts concerned activities in New York, New Jersey and Pennsylvania. Those pertaining to Green were limited to purchase of the heroin in New York and its subsequent transportation to Philadelphia.

Green alleges that the former indictment merely segregated a subsection of the overall conspiracy for independent prosecution; hence, it is argued, the instant prosecution places him in double jeopardy in violation of the Fifth Amendment.[5]

The Government asserts that Green waived his Fifth Amendment guarantee against being placed in double jeopardy by his failure promptly to raise it in the course of the prosecution. Green's counsel did not bring the prior conviction to the attention of the court until the 11th day of a 12 day trial when counsel were on the brink of beginning closing argument to the jury. To explain the delay, counsel for Green asserts that he did not learn of the prior conspiracy conviction until the day he brought it to the attention of the court.[6]

 It is manifest that a claim of double jeopardy is an affirmative defense which must be raised properly or may be deemed waived. United States v. Scott, 150 U.S.App.D.C. 323, 464 F.2d 832 (D.C.Cir. 1972); United States v. Buonomo, 441 F.2d 922 (7th Cir.), cert. denied 404 U.S. 845, 92 S.Ct. 146, 30 L. Ed.2d 81 (1971); Grogan v. United States, 394 F.2d 287 (5th Cir. 1967), cert. denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968). See Rule 12, Fed.R.Crim.P.[7] It is within the discretion of the district court, however, to determine whether or not the conduct of the defendant is such as to bar raising this affirmative defense. The District Court in the instant case chose to consider the defense of former jeopardy on the merits, without reservation; thus, implicitly deciding that it had not been waived. We see no reason to disturb

---

5. Jeopardy attached in the former prosecution with acceptance of the guilty plea. *See* United States v. Jerry, 487 F.2d 600, 606 (3d Cir. 1973).

6. In his original brief to this Court, Green's counsel stated that in the course of the "headlong rush to trial" Green was interviewed in prison but "unbeknownst to his counsel, Green was not incarcerated because he hadn't been able to make bail, *but because he was already serving a sentence of eight (8) years in prison,* (to be followed by five (5) years of special parole) *for violation of the identical statute . . . .* Because of the unprecedented time pressure in preparing for a trial of great complexity in such a short period, this information did not come to counsel's attention until the last day of trial. . . ." Brief of appellant at 2.
 In a letter to this Court, filed in response to questions raised at oral argument Green's counsel stated that he "was informed as part of the interview [with Green] that he was serving eight (8) years on a plea of guilty. Counsel did not go into the facts or merits of this other case since the case was literally closed."

7. Under Rule 12, Fed.R.Crim.P., the defense of former jeopardy *may* be raised by motion prior to trial since the manifest purpose of the rule is to dispose of such motions, if possible, without the need of a lengthy trial; *see* Dooling v. United States, 406 F.2d 192 (2d Cir.), cert. denied, 395 U.S. 11, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969), and because the double jeopardy protections are intended to avoid repeated *prosecutions* for the same offense, as well as repeated punishment. United States ex rel. Gibson v. Ziegele, 479 F.2d 773, 776 (3d Cir.), cert. denied, 414 U. S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973). *See generally* 8 J. Moore, Federal Practice ¶¶ 12.03[2] and 12.03[4] (2d ed. 1973); 1 Wright, Federal Practice and Procedure § 193 (1969).

this determination. As we have said, counsel for Green stated that he did not realize until the 11th day of trial that his client was in jail because of the earlier conviction on an arguably similar charge. Moreover, it is less than clear that defense counsel's inexplicable failure to investigate properly his client's position would fit the requirement that a waiver of such a fundamental, constitutional right be knowing, intelligent, and voluntary. *See* Green v. United States, 355 U.S. 184, 191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Having determined that there has been no waiver, we turn to the merits. The District Court stated some of the general propositions to be used when evaluating a claim of former jeopardy, as follows:

> "To support a claim of double jeopardy, it must be shown that the two offenses charged are in law and in fact the same offense. United States v. Ewell, 383 U.S. 116 [86 S.Ct. 773, 15 L.Ed.2d 627] (1966); Dryden v. United States, 403 F.2d 1008, 1009 (5th Cir. 1968). Offenses are not the same merely because they arise out of the same general course of criminal conduct, 'they are the same only when the evidence required to support a conviction upon one of [the indictments] would have been sufficient to warrant a conviction upon the other.' United States v. Pacelli, 470 F.2d 67, 72 (2d Cir. 1972)." 368 F.Supp. at 718.

■ These propositions must be tempered, however, with the consideration that a single conspiracy may not be subdivided arbitrarily for the purposes of prosecution. *See, e. g.,* United States v. Tanner, 471 F.2d 128, 141 (7th Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); United States v. Palermo, 410 F.2d 468, 470 (7th Cir. 1969); United States v. Edwards, 366 F.2d 853, 872 (2d Cir. 1966), cert. denied, 386 U.S. 919, 87 S.Ct. 882, 17 L.

Ed.2d 790 (1967); United States v. Cohen, 197 F.2d 26, 29 (3d Cir. 1952).

■ The district court, upon consideration of the evidence before it, determined the existence of multiple conspiracies and a corresponding absence of any double jeopardy violation. This decision was based at least in part on the rationale that: the 1972 conspiracy occurred on or about a specific day (*i. e.,* September 20, 1972) as compared with the 1973 indictment which alleged an ongoing conspiracy from October 30th, 1970 to April 3, 1973; the evidence required to prove the 1973 indictment would be insufficient to convict on the 1972 indictment; the particular criminal act, to which Green pleaded guilty, *i. e.,* a telephone call, was not mentioned in the 1973 indictment; the facts actually proved during the course of the trial were different than those alleged in the 1972 indictment; proof of facts essential to one charge and not the other were necessary; the 1973 indictment did not include Peters and Glover, even though these two names were known to the Grand Jury, and the government, as is evidenced by the 1972 indictment, and so could not be deemed included in the "persons unknown" category; and Green pleaded guilty to the prior indictment but innocent to the 1973 charges.

To the extent the district court relied upon the fact that Peters and Glover were not co-conspirators in the 1973 conspiracy charge, the finding of fact inherent in the determination of multiple conspiracies would appear to be based on an incorrect premise. Although Peters and Glover were not named by the Grand Jury, the inference that they could not be considered unnamed co-conspirators in light of the prior indictment was substantially rebutted by the comments of the prosecutor in the course of the trial. On the second day of the trial, during the testimony of one Linda Johnson, an unindicted co-conspirator, the name of Peters was raised and defense counsel objected. In rebuttal, the prosecutor stated as follows: "But I think there is no doubt that he [Peters] falls within

the scope of an unindicted or unnamed co-conspirator. . . ." [8]

On that same day, George Glover was referred to by the prosecuting attorney as a "worker" [9] for the same organization and Linda Johnson testified that Oscar Peters would hold the heroin after she was determined by her co-conspirators to be "too hot." [10] Finally, during the summation by Green's counsel, the prosecuting attorney complained to the court about counsel's challenge to the government, before the jury, to show any connection between Robert Green and the alleged conspiracy. He asserted that counsel for Green was well aware of the connection with this organization by virtue of the prior conviction with George Glover and Oscar Peters, "two other workers in the Shaky Young Organization." [11]

Since we are unaware how the district judge might characterize this conspiracy or conspiracies had he taken account of these revelations and they effectively negate at least one basis of the stated rationale, we deem it appropriate to remand to the district court for determination of fact as to whether the two conspiracies alleged in the 1972 and 1973 indictments were in fact but a single, continuing conspiracy, arbitrarily broken up for the purposes of prosecution and hence violative of Green's Fifth Amendment protections.

While. we draw no conclusion as to the ultimate disposition of this determination of fact, it is, we believe, worthwhile to take further cognizance of the comments of the prosecutor on the occasion of Green's sentencing under the 1972 indictment.[12] At this time, the Assistant United States Attorney addressed the judge as follows:

"The defendant is known to us to be a large trafficker in heroin. He dis-

tributes large bundles of heroin. He is not addicted to heroin.

\* \* \* "We feel, as I stated before, that Mr. Green is a substantial dealer in narcotics. The forty-one bundles involved in this case may not be a house full, but that's a large quantity of heroin. Just that alone would sell at about $100 to $110 a bundle on the street and would be worth $1,400 or a little more in another sell, and that's the only transaction that we were fortunate enough to catch Mr. Green involved in." [13]

■ We note further that the district court gave great weight to the fact that Green pleaded guilty to the first indictment and innocent to the second indictment. Although the difference in plea is probative of multiple conspiracies, undue reliance should not be placed on it. A decision to plead guilty is often tactical and far from dispositive on the issue of whether the criminal conspiracies charged are in fact elements of the same agreement. *See, e. g.,* North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L. Ed.2d 162 (1970).

Similarly, the district court may have placed undue reliance on the difference in the overt acts alleged in the two indictments. Different alleged overt acts are not necessarily inconsistent with an improper division of a single conspiracy into multiple crimes. It is the agreement which constitutes the crime, not the overt acts. United States v. Salerno, 485 F.2d 260 (3d Cir. 1973), cert. denied, 415 U.S. 994, 94 S.Ct. 1596, 39 L. Ed.2d 891 (1974). Proper weight must be given to consideration of whether the overt acts alleged in the first conspiracy charge were carried out in furtherance of the broad agreement alleged in the second indictment or whether these acts were carried out in furtherance of a different agreement.

---

8. Transcript, June 20, 1973, at 72.

9. Transcript, June 20, 1973, at 83.

10. Transcript, June 20, 1973, at 84.

11. Transcript, July 6, 1973, at 7.

12. It does not appear that the transcript of this hearing was before the District Court in this case.

13. Transcript, January 10, 1973, at 28–29.

 The government has asserted that in the event there is an issue of material fact concerning the existence of a single versus multiple conspiracies, this issue must be presented to the jury as would any other issue of material fact in a criminal case. It has been suggested that this may very well be the reason why counsel for Green failed to raise the issue of double jeopardy until subsequent to the close of the government's case.[14] Adoption of the government's position in cases such as this would indeed place counsel for the defense in the unenviable position of having to bring before the jury the prior conviction, which ordinarily, of course, it would not be mandatory to do. It would be necessary for counsel to argue that the charge brought in the instant proceeding is in fact the same as that to which his client pleaded guilty and then if the jury were to determine the threshold question adversely to the defendant, to reverse field and assert that the defendant is not guilty on this occasion. We are not wont to place defendants in the position of being forced to increase substantially the probability of their conviction by their own assertions at the risk of waiving rather significant constitutional protection.[15]

The finding of single or multiple conspiracies for the purpose of a double jeopardy defense does not go to the guilt or innocence of the accused. Correspondingly, it seems entirely appropriate that this determination be made by an evidentiary hearing prior to[16] or, if necessary, subsequent to trial.[17]

We will neither reverse nor vacate the judgment entered by the District Court. The case will be remanded for appropriate action pursuant to this opinion and this Court will retain jurisdiction of the cause. In the event there is no finding of double jeopardy following an evidentiary hearing, the extant conviction will stand.

---

14. Supplemental Brief Two For Appellee at 12.

15. We are in substantial agreement with the opinion of Judge Watkins in United States v. H. W. Koontz Creamery, Inc., 232 F.Supp. 312 (D.Md.1964); see United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973).

16. See United States v. Berrigan, supra; United States v. H. E. Koontz Creamery, Inc., supra.

17. Ordinarily, the determination of former jeopardy should be made prior to trial. However, in the event that factual matters arise, e. g., the scope of a criminal agreement, the decision on the motion may be deferred to permit consideration of factual matters which may arise at trial. See, e. g., United States v. Whitted, 454 F.2d 642, 644 (8th Cir. 1972); United States v. Treadway, 312 F.Supp. 307 (D.Va.1970); United States v. DeSapio, 299 F.Supp. 436, 442 (S.D.N.Y. 1969) (pre-trial motion), post-trial sub nom. United States v. Corallo, 309 F.Supp. 1282 (S.D.N.Y.1970), aff'd. sub nom. United States v. DeSapio, 435 F.2d 272 (2d Cir. 1970), cert. denied 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971). See also 8 J. Moore, Federal Practice ¶ 12.04 (2d ed. 1973); 1 Wright, Federal Practice and Procedure § 194 (1969).