**UNITED STATES of America**

v.

**Russell LIOTARD, et al.**

**Crim. No. 86–143.**

United States District Court,
D. New Jersey.

July 8, 1986.

Thomas W. Greelish, U.S. Atty. by Gail H. Nichols, Asst. U.S. Atty., Newark, N.J., for U.S. of America.

John F. McMahon, Federal Public Defender by Lawrence S. Lustberg, Asst. Federal Public Defender, Newark, N.J., for defendant Liotard.

STERN, District Judge.

This matter comes before the Court on a motion by defendant Russell Liotard to reconsider this Court's order denying his motion to dismiss the indictment returned by a Federal Grand Jury in Newark, New Jersey on April 18, 1986. For the reasons stated below, the motion will be denied.

### FACTS

The challenged indictment charges Mr. Liotard and two others with conspiracy to steal goods from an interstate shipment of freight, as well as the substantive offenses of stealing, receiving, concealing and storing the goods. Mr. Liotard was a dispatcher for Veteri Trucking Company. The indictment charges that Mr. Liotard told a Veteri driver, unindicted co-conspirator Albert Little, that a trailer-load of Sony electronic goods on a Veteri parking lot in Fairfield, New Jersey, would be a good load to steal. On or about August 4, 1985, Little allegedly drove the trailer to Elmer, New Jersey. There, Mr. Liotard, his co-defendants and others, allegedly unloaded the trailer and placed the goods on another trailer at the home of defendant Lee J. Folk. These goods were allegedly moving in interstate commerce and worth over $400,000.

Prior to his indictment in New Jersey, Mr. Liotard was indicted, tried and acquitted in Pennsylvania for criminal activity beginning on September 27, 1985. On that day, the Pennsylvania indictment charged, Mr. Liotard discussed with Albert Little the theft of goods loaded on trailers at the Veteri lot. Liotard gave Little a list of approximately ten trailers parked at the lot. Little removed one of the trailers to Parsippany, New Jersey on September 27, 1985. The next day, Little and co-defendant Otis Thompson stole two more trailers from the same lot. Together with co-defendant Ernest Fleming, Thompson and Little drove the three stolen trailers to Pittsburgh, Pennsylvania on September 28, 1985.

All four of Mr. Liotard's co-defendants pleaded guilty to offenses charged in the Pennsylvania indictment. All four testified against Mr. Liotard at his trial. Under Fed.R.Evid. 404(b), the trial judge admitted certain testimony outside the scope of the charged conspiracy regarding the theft of the Sony electronic goods in early August 1985, as well as testimony about discussions between Liotard and Little in April or May 1985 pertaining to a planned theft of oil trucks. After the five-day trial in Pennsylvania, Mr. Liotard was acquitted of all counts on March 7, 1986.

After being named in the New Jersey indictment, Liotard moved to dismiss on the grounds of double jeopardy and the policy of *Petite v. United States*, 361 U.S. 529, 530, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) against multiple prosecutions, even absent double jeopardy, where several offenses

arise "out of a single transaction." Both sides briefed these issues, and after an oral hearing before this Court on June 11, 1986, defendant's motion was denied. The present motion for reconsideration was filed on June 19, 1986.

## DISCUSSION

As defendant points out, in denying his original motion to dismiss, this Court expressly relied on *United States v. Sargent Electric Co.*, 785 F.2d 1123 (3d Cir.1986) and *United States v. Felton*, 753 F.2d 276 (3d Cir.1985). Judge Adams summarized concisely the Third Circuit test for assessing double jeopardy claims and the special concern that arises in conspiracy cases:

> This Court has adopted the "same evidence" test for assessing double jeopardy claims. *See United States v. Young*, 503 F.2d 1072, 1076 (3d Cir.1974). Under this test, a second indictment for an offense violates the double jeopardy clause "only when the evidence required to support a conviction upon [the offense] would have been sufficient to warrant a conviction upon" a prior indictment. *Id.* at 1075 (quoting *United States v. Pacelli*, 470 F.2d 67, 72 (2d Cir.1972)). However, *Young* cautioned that application of the same evidence test "must be tempered ... with the consideration that a single conspiracy may not be subdivided arbitrarily for the purposes of prosecution." *Id.* As we explained there, "[d]ifferent alleged overt acts are not necessarily inconsistent with an improper division of a single conspiracy into multiple crimes. It is the agreement which constitutes the crime, not the overt acts." *Id.* at 1976. *See also Felton*, 753 F.2d at 278.

785 F.2d at 1138–39 (Adams, J., dissenting).

■ We believe that application of the "same evidence" test leads necessarily to a finding of no double jeopardy problem in the present case. "Offenses are not the same merely because they arise out of the same general course of criminal conduct, 'they are the same only when the evidence required to support a conviction upon one of [the indictments] would have been sufficient to warrant a conviction upon the others.'" *Felton*, 753 F.2d at 278 (quoting *United States v. Young*, 503 F.2d 1072, 1075 (3d Cir.1974)). In the present case, the evidence required to support conviction on the Pennsylvania indictment could not conceivably have led to conviction on the New Jersey indictment. In Pittsburgh, Mr. Liotard was charged with conspiracy to transport three trailers from New Jersey to Pittsburgh at the end of September 1985. In New Jersey, the grand jury charged that Mr. Liotard conspired to steal a different trailer-load of goods early in August. The government asserts, and defendant does not deny, that these alleged crimes were discussed on August 3, 1985 and September 27–28, 1985 respectively.· Three persons, including Liotard, were allegedly involved in both conspiracies, but five persons were involved only in one of them. It is self-evident that these indictments charge separate agreements. In *Sargent Electric*, the court found that defendants who allegedly conspired to rig bids at several facilities could be charged with multiple Sherman Act offenses, despite their common objective of price-fixing, because the conspiracies involved different markets. 758 F.2d at 1130. It is far more obvious that two conspiracies may be charged in the present case because the objectives and offenses were different, as well as many of the participants.

■ In deciding to deny the original motion to dismiss, this Court applied a more intricate "totality of the circumstances" test favored by Judge Adams in his *Sargent Electric* dissent:

> Under the totality of the circumstances approach, a court will consider the degree of.overlap between the two charged conspiracies in the following factors: (1) the criminal offenses charged in the successive indictments; (2) the participants; (3) the time period involved; (4) similarity of operation; (5) the overt acts alleged; (6) the geographic scope of the alleged conspiracies or locations where overt acts

occurred; and (7) the objectives of the alleged conspiracies.

*Id.* at 1139 (Adams, J., dissenting). We believe that this test is, in general, more favorable to criminal defendants although its application overlaps considerably with that of the "same evidence" test. Even under this test, however, defendant Liotard clearly fails to show double jeopardy.

At the outset, we must note that one or more of the factors listed by Judge Adams are likely to be present whenever professional criminals are involved without creating a double jeopardy problem. The majority of the factors may even be present, for no authority supports the proposition that they are equally weighted. A professional "second-story man," for example, might ·find himself charged in successive indictments with similar offenses (factor one), with the same participants (factor two), that are similar in operation (factor four), and in the same geographical area (factor six). The offenses may even be close in time (factor three). Yet no court would bar an indictment for burglary because of a prior trial for the burglary of a different house. In this hypothetical the absence of identical objectives (factor seven) and overt acts (factor five) is enough to defeat a claim of double jeopardy.

We therefore attach little significance to the presence of some of these factors to some degree in the present case. As mentioned above, there is some overlap in the participants charged in the two indictments (factor two). There is also some overlap in time (factor three). The Pennsylvania indictment charged a conspiracy from on or about September 27, 1985 to on or about October 2, 1985. The New Jersey indictment charges a conspiracy from on or about August 3, 1985 to on or about December 30, 1985. The overlap is due, however, to the defendants' success in concealing the Sony electronic goods theft for several months, rather than to the existence of an overarching conspiracy involving repeat offenses. The two indictments clearly define two separate incidents occurring nearly two months apart.

While neither of these factors clearly favors Mr. Liotard's claim, the remaining factors clearly do not favor it. The indictments charge different offenses (factor one). Although the operations were similar in that Liotard's job gave him information about the objectives of both conspiracies, he was far more closely in control of the one charged in the New Jersey indictment (factor four). He told Little to steal a specific truck, was present when it was unloaded, and participated in reloading the Sony electronic goods onto a new truck and in trying to sell them. The Pennsylvania indictment charged that Liotard gave Little a choice of ten trucks to steal and helped plan the transport of stolen property. But there, Liotard did not participate in moving, unloading or trying to sell any of the property.

The overt acts alleged in the two indictments are completely different (factor five).

The alleged New Jersey conspiracy occurred entirely within New Jersey, while the Pennsylvania indictment charged transport of stolen merchandise to Pittsburgh (factor six).

The objectives of the two conspiracies were entirely different.

■ Once a defendant has made a "non-frivolous" showing of double jeopardy, the burden of persuasion shifts to the government. *Felton*, 753 F.2d at 278; *United States v. Inmon*, 568 F.2d 326, 330 (3d Cir.1977). We find that Mr. Liotard has failed even to make out a non-frivolous showing sufficient to shift the burden to the government and require an evidentiary hearing.

■ Defendant's *Petite* policy claim fails for the same reasons that defeat the double jeopardy claim. The *Petite* policy bars multiple prosecutions where several offenses arise "out of a single transaction." 361 U.S. at 530, 80 S.Ct. at 451. We find that Mr. Liotard was indicted for offenses arising out of two separate transactions.

Accordingly, the motion for reconsideration is denied.