The **UNITED STATES** of America

v.

Carmine G. **DE SAPIO**, Antonio Corallo
and **Henry Fried, Defendants.**

**No. 68 Cr. 1012.**

United States District Court
S. D. New York.

April 24, 1969.

On Reargument, June 16, 1969.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for the United States, Paul K. Rooney, Asst. U. S. Atty., Southern Dist. of New York, of counsel.

Maurice Edelbaum, New York City, for defendant Carmine G. De Sapio, Lawrence K. Feitell, New York City, of counsel.

Slotnick & Narral, New York City, for defendant Antonio Corallo, Barry Ivan Slotnick, New York City, of counsel.

Sol Gelb, New York City, for defendant Henry Fried, Arthur Karger, New York City, of counsel.

METZNER, District Judge.

Defendants De Sapio, Corallo and Fried are charged with violations of law in a four-count indictment. Count 1 charges a conspiracy by the defendants and Itkin and Marcus, named as coconspirators but not as defendants, to obstruct commerce and affect movement in commerce by extortion (18 U.S.C. § 1951), to use facilities in interstate commerce with intent to carry on the unlawful activity of bribery (18 U.S.C. § 1952), and to use the mails to defraud (18 U.S.C. § 1341). Counts 2, 3 and 4 charge the defendants with substantive violations of § 1952.

Each of the defendants has made various pretrial motions. They have also adopted one another's motions to the extent such were not contained in their own papers.

*Claimed Prejudice Resulting From Compelling Defendants to Assert Fifth Amendment Privilege Before Grand Jury*

Defendants move to dismiss the indictment on the ground that they were compelled to appear before the grand jury and invoke their constitutional privilege against self incrimination after the government was advised that they would refuse to testify.

 It is defendants' contention that this procedure could only have the effect of prejudicing them by permitting the grand jury to draw adverse inferences because of their refusal to testify. On a trial the government may not call a witness who it knows will invoke his constitutional privilege. United States v. Maloney, 262 F.2d 535 (2d Cir. 1959). This rule, however, does not extend to appearances before the grand jury even where the person is a target of the inquiry and may become a defendant. This has been made abundantly clear by numerous decisions by the Court of Appeals for this circuit. United States v. Wolfson, 405 F.2d 779 (2d Cir. 1968); United States v. Fortunato, 402 F.2d 79 (2d Cir. 1968); United States v. Capaldo, 402 F.2d 821 (2d Cir. 1968); United States v. Winter, 348 F.2d 204, 207–208 (2d Cir.), *cert. denied*, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965).

 A reading of the grand jury minutes discloses that each defendant was fully and adequately advised of his constitutional rights even to the point that he could consult with counsel during the interrogation if he so desired. While the minutes do not disclose that the prosecutor further advised the grand jurors that they could not draw inferences adverse to the defendants from their refusal to testify, I find that such failure does not warrant a dismissal of the indictment. The court is aware of the language on this point in the *Wolfson* case, *supra*, but does not consider that it was necessary to the holding in that case.

De Sapio specifically claims that despite the prosecutor's knowledge of his counsel's advice, the "defendant was disarmed by the prosecutor into disregarding the instructions of counsel to invoke the privilege at the threshold of the questioning." He goes on to say that "knowing in advance what counsel's instructions were to De Sapio, the prosecutor commenced, and developed, a line of inquiry without any regard whatsoever to the instructions and directions supplied to De Sapio by his attorney." All of this is claimed to add up to a denial of the right to counsel.

 Counsel may not be present during the questioning of his client before the grand jury. However, he may be present outside the room for consultation if his client so desires. Counsel was available for such consultation, but defendant made no request to speak to him. If he answered questions despite counsel's advice, that was by his own choice. The charge that defendant was "disarmed by the prosecutor" is vague, indefinite and difficult to understand in this case.

De Sapio also charges that the prosecutor deliberately smeared him before the grand jury "by depicting inferentially that his counsel is organized crime's legal brain bank." Since this defendant's testimony before the grand jury is being made available to him, he will readily ascertain that the charge is completely unfounded.

*Plea of Double Jeopardy*

Defendants Corallo and Fried raise a plea of double jeopardy in violation of their rights under the Fifth Amendment. They were previously indicted in this court on a charge of conspiracy to violate § 1952. United States v. Corallo et al., D.C., 281 F.Supp. 24. Their codefendants in that indictment were Marcus, Itkin, Motto, Rappaport and S. T. Grand, Inc. Marcus was the Commissioner of the Department of Water Supply, Gas and Electricity of the City of New York. It was the object of the conspiracy to bribe Marcus to award a contract without public bidding to Fried and his company, S. T. Grand, Inc., to clean the Jerome Park Reservoir in New York City Cor-

allo, Fried, Motto, Rappaport and the corporation pleaded not guilty and all except Rappaport were convicted after trial. Itkin and Marcus pleaded not guilty and were granted a severance on application of the government. Subsequently, Marcus withdrew his plea of not guilty and pleaded guilty. Both Itkin and Marcus testified on behalf of the government in the trial of the remaining defendants. Itkin has not as yet been brought to trial.

That indictment alleged that the conspiracy commenced on or about January 1, 1966 and continued to December 18, 1967, the date of filing the indictment. The contract was alleged to have been awarded to S. T. Grand, Inc. in November 1966 and payments of money were alleged to have been made by the corporation to Marcus, Itkin, Motto and Corallo as payments were received from the city during the course of performing the work on the contract. The last overt act was alleged to have taken place in June 1967.

The present indictment charges that the conspiracy commenced on January 1, 1967 and continued up to December 20, 1968, the date the indictment was filed. The alleged objects of the conspiracy here are bribery of Marcus and extortion of Consolidated Edison in relation to the latter's business, which has no connection with the Jerome Park Reservoir contract. The overt acts alleged cover the period August 19, 1967 through January 5, 1968, which is subsequent to the last overt act alleged in the first indictment. The defendants and coconspirators are Corallo, Fried, De Sapio, Itkin and Marcus as compared with Corallo, Fried, Itkin, Marcus, Rappaport and Motto in the first trial. Thus, there are four persons common to both indictments and three who are not.

■ The movants assert that only one conspiracy exists under the facts, and they cannot be subjected to multiple prosecutions for its several objects. In United States v. Cohen, 197 F.2d 26 at p. 29 (3d Cir. 1952), the court said:

"While a prosecution for one conspiracy is no bar to a prosecution for participation in another, a single conspiracy cannot be split up for the purpose of prosecution."

Neither may a single conspiracy be split up to provide separate counts in one indictment because it has as its object the commission of several crimes. Cf. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

■ The rule as to double jeopardy has been framed in United States v. Kramer, 289 F.2d 909, 913 (2d Cir. 1961), in the following language:

"Offenses are not the same for purposes of the double jeopardy clause simply because they arise out of the same general course of criminal conduct; they are the 'same' only when 'the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other.' Morey v. Commonwealth, 1871, 108 Mass. 433, 434, quoted with approval in Ex parte Nielsen, 1889, 131 U.S. 176, 187–188, 9 S.Ct. 672, 676, 33 L.Ed. 118 and Gavieres v. United States, 1911, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L. Ed. 489."

That case dealt with a prior indictment for substantive offenses only, in which the defendant was acquitted. The second indictment contained various counts, three of which charged conspiracies to commit the acts which were the bases of the substantive counts in the first indictment. While the prosecution offered evidence of the conspiratorial agreement on the first trial, it was held not to be an essential element for conviction on that indictment. The court overruled the plea of double jeopardy.

Following the *Kramer* case, the court was presented with the plea where both indictments were based on conspiracy. United States v. Friedland, 391 F.2d 378 (2d Cir. 1968). The court adopted the *Kramer* language on defendant's claim that the offense charged was another aspect of the conspiracy alleged in the first indictment. See also United States v. Edwards, 366 F.2d 853, 872 (2d Cir.

1966). In an earlier case in this circuit, the court said:

"The defendant may not later be tried again on that same fact situation, where no significant additional fact need be proved, even though he be charged under a different statute." United States v. Sabella, 272 F.2d 206, 212 (2d Cir. 1959).

■ I have reviewed some 1100 pages of testimony from the first trial with these guidelines in mind. On the government's case, on direct examination, there was testimony that Motto, not a defendant or coconspirator here, asked if Marcus was amenable to taking care of deals and contracts with the city. Marcus agreed that he was. Subsequently, Itkin came to Marcus about the Jerome Park Reservoir contract on behalf of Motto, who was trying to get the contract for Fried's company. The necessary arrangements were concluded. About a year later, when the conspirators were carving up some of the proceeds of that "deal," Marcus was unhappy about his share and Itkin told Corallo and Motto that they ought to take better care of Marcus if he was going to play ball with them on other "deals."

All of the other evidence in the record which could possibly relate to the present charge involving dealings with Consolidated Edison was brought out by defendants on cross-examination in an attempt to destroy the credibility of Marcus and Itkin. It covered a period subsequent to the events involved in the first trial. It indicates a separate and distinct conspiracy from that proven on the first trial. For example, Itkin testified that Fried told him that Itkin and Marcus were handling the city deals "terribly" and that they should use him and cut out Motto and Corallo. Fried mentioned Consolidated Edison to show that he knew what was going on, and later indicated that De Sapio was the one to handle that project. Thereafter Fried invited Itkin to his farm where he introduced him to De Sapio and told him that De Sapio would handle all deals from then on, and that "we should leave the others out of it."

While the testimony brought out by the government might possibly tend to show the existence of a continuing conspiracy with multiple objects, such evidence was not necessary to convict these defendants of the conspiracy charged in the first indictment. That testimony could not convict these defendants of the present charge, especially since the testimony elicited by the defendants, referred to above, shows the probability of a different conspiracy with a different object.

It may be, of course, that after a full trial, when the court can compare the evidence on both trials, a different conclusion may be reached as to the existence of separate conspiracies. Cf. United States v. Edwards, *supra*, 366 F.2d at 872. However, at this stage the test that different proof will be necessary to convict on this indictment has been met, and there is no justification for a pretrial hearing on this issue.

*Plea of Harassment, Res Judicata and Fed.R.Crim.P. 48(b)*

Aside from the claim that they have been placed in double jeopardy by this indictment, defendants Corallo and Fried urge that the indictment must be dismissed on nonconstitutional grounds of public policy, res judicata and unnecessary delay in presenting the charge to the grand jury.

They contend that even if this indictment does not place them in double jeopardy it is apparent that the activities relied on arose out of a general course of conduct. Consequently, it is unfair to allow the government to indict and convict on one act involving the bribery of Marcus (the Jerome Park Reservoir contract) and then indict them in connection with the bribery of Marcus on another contract involving Consolidated Edison. They claim that the government had the necessary information regarding the crimes alleged in this indictment prior to the handing up of the first indictment.

■ Reference is made to Petite v. United States, 361 U.S. 529, 530, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960), in which the government stated that it was its general policy

"that several offenses arising out of a single transaction should be alleged and tried together and should not be made the basis of multiple prosecutions, a policy dictated by considerations both of fairness to defendants and of efficient and orderly law enforcement."

The key words in this statement are "single transaction." Their meaning becomes apparent in the context of the case in which they were offered. The petitioner had been indicted for suborning perjury in connection with proceedings for the deportation of an alien. He was sentenced on this indictment and was subsequently indicted for suborning perjury in other hearings in connection with the same deportation proceeding. The Court remanded the case with directions to dismiss the indictment upon motion of the government. Defendants' reliance on this case is not well founded, since we are not dealing here with a "single transaction" in the sense used in *Petite*. It is true that bribery of Marcus is common to both accusations, but there the similarity ends. As has already been stated, the conspiracies appear to be separate and distinct, and deal with different contracts. This distinction disposes of defendants' reliance on United States v. Sabella, *supra*.

We turn now to the plea of res judicata. In United States v. Oppenheimer, 242 U.S. 85, 88, 37 S.Ct. 68, 69, 61 L.Ed. 131 (1916), Justice Holmes stated that even though double jeopardy did not apply by its terms that did not necessarily mean that no other principle could safeguard against abuses. In referring to res judicata, he said:

"the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice [citation omitted], in order, when a man once has been acquitted on the

merits, to enable the government to prosecute him a second time."

The Court there was dealing with a defendant's successful plea of the statute of limitations to a prior indictment. It was the government's contention that the prior disposition did not place the defendant twice in jeopardy for the same offense in the sense of being before a jury on the same set of facts. The Court quoted with approval from The Queen v. Miles, 24 Q.B.D. 423, 431, that when a criminal charge has been adjudicated, whether by acquittal or conviction, it "is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense. * * * In this respect the criminal law is in unison with that which prevails in civil proceedings." 242 U.S. at 88, 37 S.Ct. at 69.

■ We are not confronted here with the same offense and therefore the tenor of the *Oppenheimer* case is not applicable. For a general discussion of the applicability of the principles of res judicata to criminal cases, see 1B Moore, Federal Practice ¶ 0.418[2], at 2751–2774 (2d ed. 1965). Incidentally, the court has not found any case in which the defense of res judicata was used in defendant's favor after a prior conviction.

■ Finally, Corallo and Fried seek dismissal pursuant to Fed.R.Crim.P. 48 (b) on the ground that there was unnecessary delay in presenting the charge to the grand jury. From a reading of the prior record, which obviously was not made with the current charge in mind, it is not clear whether Itkin's first report to the FBI about the Consolidated Edison matter was made before or after the filing of the first indictment. At most it could only have preceded it by a few days. In any event, he did not mention Corallo until after that indictment. It is fair to infer that the government had not received a full report on this transaction until after the first indictment. The government must be afforded an opportunity to check out information of the type submitted by Itkin.

It cannot be expected to move with the speed necessary to have joined the present charges with the prior one, or to have held up the presentation of the first charge. See United States v. Capaldo, 402 F.2d 821, 823 (2d Cir. 1968).

Assuming, for argument's sake, that the government had been in a position to present this case to the grand jury before the first trial in June 1968, the resulting indictment could not have been moved for trial, because these defendants were involved in preparing for the first trial. Secondly, these defendants would have been in a position to claim that the publicity attendant upon the second indictment would prejudice the upcoming trial.

■ Nothing has been brought to the attention of the court to show prejudice in defendants' ability to defend because of the lapse of a year between the two indictments. Financial considerations or the prior conviction are not considered prejudicial for the purposes of applying Rule 48(b).

*Motions to Dismiss the Conspiracy Count*
 (a) Sufficiency.

The first count of the indictment alleges in paragraph 1 a conspiracy to violate §§ 1951, 1952 and 1341 of Title 18 of the United States Code. The defendants claim that the indictment fails to allege all essential elements of the crime intended to be charged. Further, it is urged that the indictment does not contain a statement of facts and circumstances as will inform the accused of the specific offenses alleged to be the objects of the conspiracy, but only alleges such crimes in the generic terms used in the respective statutes.

■ The rule to be applied to this motion is found in the oft-quoted language from Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932), in which the Court said:

 "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

■ The crime of conspiracy is defined in the statute as when "two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such persons do any act to effect the object of the conspiracy * * *." 18 U.S.C. § 371. The essence of the crime is the agreement and not the commission of the crime which is the object of the conspiracy. United States v. Rabinowich, 238 U.S. 78, 87–89, 35 S.Ct. 682, 59 L.Ed. 1211 (1915). The conspiracy is the crime no matter how diverse its objects may be. Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561 (1919). It is immaterial to the commission of the crime of conspiracy whether the object of the conspiracy is achieved. *Rabinowich, supra.* And it is punishable as a conspiracy even though the intended object is also achieved. Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450 (1913). The precise nature and extent of a conspiracy must be determined by reference to the agreement which embraces and defines its objects. Braverman v. United States, *supra.*

■ The indictment alleges the agreement in the first paragraph of the first count. In the second paragraph, it is alleged that one of the objects of the conspiracy was to violate § 1951 (known as the Hobbs Act), in that the defendants would, by extortion, "obstruct, delay and affect commerce and the movement in commerce of articles and commodities, namely electricity and gas provided and carried by The Consolidated Edison Company of New York, Inc." The word "extortion" is defined by the statute. The indictment specifies electricity and gas provided by Consolidated Edison as the commodities that would be affected

in their movement in commerce. Defendants are thus fully advised of the offenses which it is claimed they conspired to commit. It is not necessary to describe the substantive offense which is the object of the conspiracy with the particularity required in an indictment for that offense. Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545 (1927); United States v. Knox Coal Co., 347 F.2d 33, 38 (3d Cir. 1965).

The means to carry out this unlawful purpose are set forth with sufficient particularity to meet the requirement that the court be able to ascertain that in fact the conspiracy was illegal. It is alleged that coconspirator Marcus, in return for bribes, would misuse his power as Commissioner of the Department of Water Supply, Gas and Electricity of the City of New York at the direction of the defendants; that defendants De Sapio and Fried would inform Consolidated Edison that they could cause coconspirator Marcus to misuse his power either to the detriment or benefit of Consolidated Edison; that as a result Consolidated Edison would enter into contracts with defendant Fried and companies owned, controlled and designated by Fried which would pay monies to Fried in the form of dividends, salary and commissions; that Fried would pay defendants De Sapio and Corallo for their services to the conspiracy.

Finally, eleven overt acts are alleged in the indictment. Some of them clearly refer to this object of the conspiracy and may be considered in determining whether the standards as to sufficiency have been met. United States v. Kahn, 381 F.2d 824 (7th Cir. 1967).

What has been said about the sufficiency of the indictment regarding violation of § 1951 as an object of the conspiracy applies as well to § 1952. The third paragraph of this count charges that it was part of the conspiracy to violate § 1952, in that the defendants and the coconspirators "would travel in interstate commerce" and

"would use facilities in interstate commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit, bribery in violation of the laws of the State of New York * * * and thereafter would perform and attempt to perform such acts and cause them to be performed and attempted."

The grand jury alleged the object of the conspiracy in the general words of the substantive crime, but went further and spelled out the means whereby this portion of the conspiracy would be carried out. It is alleged that coconspirator Itkin would meet with defendant Corallo and coconspirator Marcus; that Marcus, in return for bribes, would misuse the power of his office at the direction of the defendants; that defendant Fried would cause defendant De Sapio to pay bribes to Marcus. Overt acts alleged are that Itkin drove from New York City to Germantown, New York, via New Jersey on August 19, 1967; that he drove from Germantown to New York City via New Jersey on August 21, 1967; that a telephone call was made on or about October 12, 1967, from Itkin in New Jersey to Marcus in New York, and that defendant De Sapio gave Itkin $5,000 on or about December 4, 1967.

The fourth paragraph of this count charges that it was part of the conspiracy to violate § 1341, known as the mail fraud statute. Here again, the indictment alleges the object of the conspiracy in the words of the statute. It charges that the defendants and conspirators

"having devised a scheme and artifice to defraud the people ( ° the City of New York and for obta ing money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice would place and cause to be placed in post offices and authorized depositories for mail, matters and things to be sent and de-

livered by the United States Post Office Department * * *."

■ A reading of the "means" paragraphs and the allegations of the overt acts does not furnish any information similar to that detailed above in relation to §§ 1951 and 1952. Nothing therein can be readily related to the charge that the defendant "devised a scheme and artifice to defraud the people of the City of New York." The charge that these defendants devised a scheme "for obtaining money and property by means of false and fraudulent pretenses, representations and promises" does not even state who was to be defrauded, let alone give any indication of the nature of the scheme. The only overt act alleged that possibly could be related to the gist of the crime of mail fraud is that Marcus "caused a letter to be delivered to Con Edison." The indictment does not even state whether the letter was placed in the mails, which is the essential element of mail fraud. The letter could just as easily have been hand-delivered, which is not an uncommon practice in this city.

■ As noted above, the offense-object in a conspiracy charge need not be as perfectly pleaded as required if it were being alleged as a substantive offense. However, there is still the necessity for some indication of the scheme alleged to have been devised by the defendants. United States v. Mercer, 133 F.Supp. 288 (N.D.Cal.1955); cf. United States v. Brandom, 273 F.Supp. 253, 258 (E.D.Wis.1967) [the indictment charged a scheme to defraud persons desirous of purchasing insurance]. In all of the cases relied on by the government, there was something more than the skeletal allegations in the generic terms used in the fourth paragraph of this indictment. This portion of the count is insufficient.

I hold that the first count satisfies the standard test for gauging the sufficiency of the charge except that the fourth paragraph is stricken as surplusage pursuant to Fed.R.Crim.P. 7(d). United States v. Strauss, 283 F.2d 155, 158 (5th Cir. 1960).

(b) Duplicity.

■ Defendants claim that the conspiracy count is duplicitous. They concede that a single conspiracy count may have as its object the commission of several crimes. However, it is urged that these separate offenses must be of the same general character. Such a requirement appears by way of dicta in two Fifth Circuit cases, Stewart v. United States, 131 F.2d 624 (1943), and Schefano v. United States, 84 F.2d 513 (1936), in which claims of duplicity were overruled by the court. This court has not found any other authority for defendants' point and from a reading of the cases it does not appear to be well taken.

Defendants argue that since bribery and extortion are two separate crimes (cf. Bianchi v. United States, 219 F.2d 182, 190 (8th Cir. 1955)) the indictment is charging two separate conspiracies.[1] However, only one agreement is alleged in the indictment and, as noted above, it is the agreement which is the criminal act and not the substantive offenses which may be objects of the conspiracy.

The leading case on the question is Braverman v. United States, *supra,* which is cited in myriad cases for the proposition that an agreement to violate several different penal statutes is only one conspiracy and should be pleaded in one count. In that case, the lower court held that where an indictment contained several conspiracy counts, each alleging a violation of different penal statutes, the jury could find the defendants guilty

---

1. It should be noted that on the motions to dismiss for double jeopardy, discussed above, defendants argued that there was only one conspiracy, relying on Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). Further, it is interesting to contemplate what course of action the defendants would have taken if their position here had been adopted and the indictment had contained separate conspiracy counts, exposing them to separate sentences in the event of conviction on both counts.

on each count despite the fact that there was evidence of only a single conspiracy. The defendants were sentenced to eight years' imprisonment even though the maximum penalty for conspiracy at the time was two years. The Court held:

"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. * * * For such a violation only the single penalty prescribed by the statute can be imposed." 317 U.S. at 53–54, 63 S.Ct. at 102.

The count is not duplicitous.

(c) Alleged Failure to Cite Pertinent Statutes.

It is claimed that the conspiracy count does not comply with Fed.R.Crim.P. 7 (c) because it fails to state the official citation of the statute which defendants are alleged to have violated. This failure is asserted to mislead the defendants to their prejudice and therefore to warrant dismissal.

It is alleged that one of the objects of the conspiracy was to violate § 1952, which refers to use of an interstate facility in connection with an unlawful activity. The unlawful activity charged in the indictment is bribery in violation of the laws of New York. The indictment covers the period January 1, 1967 to December 20, 1968, the date the indictment was filed. On September 1, 1967 New York adopted a new penal law and defendants point out that they are not aware of which law it is claimed was violated and the section thereof.

The requirement for citation of the statute claimed to have been violated is to aid a defendant in clearly understanding the charge against him, and to aid the court in appraising the indictment on a motion to dismiss or for judgment of acquittal, or in connection with a charge to the jury. The defendants are charged in this count with having engaged in a conspiracy in violation of 18 U.S.C. § 371 and this is the citation reference appearing at the end of the count. Citation is not necessary for the offense which is the object of the conspiracy, because a conspiracy neither violates nor arises under the statute whose violation is its object. *Braverman, supra* at 54, 63 S.Ct. 99.

The objection made by defendants can be met by furnishing the New York statute citation in a bill of particulars, which the government has consented to do.

*Motions to Dismiss the Second, Third and Fourth Counts*

Each of these counts alleges a violation of 18 U.S.C. § 1952. That section provides that anyone who travels in interstate commerce or uses "any facility in interstate or foreign commerce, including the mail, with intent to" carry on the unlawful activity of bribery, "and thereafter performs or attempts to perform" any act in the carrying on of bribery, is guilty of a crime.

Defendants first urge that the second, third and fourth counts are insufficient in that they allege "thereafter to perform and to attempt to perform" the carrying on of said bribery. It is the use of the words "to attempt" instead of just "attempts" that is the basis of defendants' argument. While these portions of each of the counts may be inartistically drawn, I do not find that they are insufficient as a matter of law. The essential elements of the crime are adequately set forth and the defendants are adequately informed as to the charge they must meet. The courts have held that the "thereafter" acts are not the essence of the offense and need not be alleged with specificity. United States v. Gerhart, 275 F.Supp. 443 (S.D.W.Va. 1967); United States v. Teemer, 214 F.Supp. 952 (N.D.W.Va.1963) (this case distinguishes Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), upon which defendants place great reliance).

Defendants contend that the fourth count, which alleges the use of the telephone in *intrastate* commerce, is insufficient because § 1952 requires that the telephone be used in interstate commerce. They argue that the persons in telephonic communication must be speaking from different states. There is no decided case on this point involving § 1952. In all of the cases relied on by the government and defendants, the facts show the interstate use of the mails or telephone. In United States v. Gerhart, *supra,* the court indicated that absent interstate mailing the statute was not violated.

▇▇▇▇ There is no doubt that Congress has the power to regulate intrastate transactions when it is necessary for the protection of interstate commerce. Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1953); Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed 893 (1937); Houston, E. & W. Tex. Ry. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914). Similarly, since Congress has the power to establish post offices and post roads, it may properly exclude matter from intrastate mail which is in furtherance of a fraudulent scheme. Holmes v. United States, 134 F.2d 125, 135 (8th Cir. 1943). The question here is whether Congress exercised that power to regulate intrastate commerce by the words used in the statute. § 1952 was proposed by the Attorney General in 1961 as part of his legislative program. His letter of transmittal of the draft legislation stated:

"Because many rackets are conducted by highly organized syndicates whose influence extends over State and National borders, the Federal Government should come to the aid of local law enforcement authorities in an effort to stem such activity.

"The bill which I submit to the Congress would impose criminal sanctions upon the person whose work takes him across State or National boundaries in aid of certain 'unlawful activities.'"

2 U.S. Cong. & Adm. News 1961 at p. 2666.

The letter talks about impeding and disrupting the flow of profits in far-flung criminal activities. The report of the House Committee followed in the same vein when it stated:

"The interstate tentacles of this octopus known as 'organized crime' or 'the syndicate' can only be cut by making it a Federal offense to use the facilities of interstate commerce in the carrying on of these nefarious activities." 2 U.S. Cong. & Adm. News, *supra* at p. 2665.

▇▇▇▇ With this background as to the intent of Congress, it is apparent that the words "uses any facility in interstate or foreign commerce" were intended to embrace telephone calls made only in interstate or foreign commerce. This conclusion is buttressed by the cases discussing the Securities Act of 1933 (15 U.S.C. § 77a et seq.) and the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.). These statutes have as one of their objects the prevention of schemes to defraud the investing public. The 1933 act, in § 17(a) (15 U.S.C. § 77q(a)), speaks of "the use of any means or instruments of transportation or communication *in* interstate commerce." This has been held to mean that the communication itself must be interstate. See Rosen v. Albern Color Research, Inc., 218 F.Supp. 473 (E.D.Pa.1963). On the other hand, § 10 of the 1934 act (15 U.S.C. § 78j) speaks of "the use of any means or instrumentality *of* interstate commerce." It has been held that under this section intrastate use of the facility is all that is required. Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).

That Congress may draw such distinctions even within the same section of the law is illustrated by Weiss v. United States, *supra.* The Court was considering § 605 of the Communications Act of 1934 (47 U.S.C. § 605), which consists of four clauses separated by semicolons, and

it held that some clauses applied to interstate telephone calls and others to intrastate telephone calls.

 The fourth count of the indictment is therefore dismissed.

*Reading of Grand Jury Minutes*

It is urged that the court read the grand jury minutes or hold a pretrial hearing to ascertain (a) whether the facts as defendants claim them to be are true, in which event it is their contention that there is no jurisdictional basis for the indictment, and (b) whether Itkin's travel as alleged in overt acts 1 and 2 was not in fact arranged for by the government to create a jurisdictional basis for counts 1 and 2.

 The indictment has been returned by a legally constituted grand jury and this is sufficient to call for a trial on the merits. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The procedure requested by the defendants would call for a preview of a large portion of the government's case, which, of course, is improper even under the most liberal procedures. The issue as to whether there are any facts to substantiate jurisdiction may be tested by motion at the end of the government's case. If there are disputes as to such facts, they can only be resolved by the jury and not by the court.

The request by the defendants for the production of Itkin for examination has been consented to by the government. The examination shall proceed in this courthouse on May 9, 1969 at 10:30 A.M. and continue from day to day, if necessary, until completed.

*Motions to Suppress*

Defendants move to suppress testimony allegedly obtained by illegal electronic surveillance and wire tapping.

The claim for a hearing is predicated upon information obtained in the prior trial, discussed above in connection with the plea of double jeopardy. Itkin testified that he had requested the FBI to wire his house to enable him to record conversations with his codefendants. This request was denied, but Itkin went ahead on his own and acquired a tape recorder which he used to record conversations he had with other persons in his apartment. The tapes were turned over to the FBI. The government admits that Itkin recorded conversations with Corallo during the course of the conspiracy. It further states that "none of the defendants, including defendant De Sapio, was overheard as a result of any electronic surveillance or wiretapping conducted by the government." In response to the court's inquiry of April 7, 1969, the United States Attorney has stated that "A further examination of our files has disclosed that no known premises of the defendants were subject to electronic surveillance or wiretapping by the Government."

The cases indicate that a representation by the government that it has not conducted electronic surveillance or wire tapping of a defendant's premises, or used such means to overhear his conversations, is sufficient to deny a motion to suppress. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297, (March 24, 1969) (footnote denying certiorari to some of the petitioners); United States v. Covello, 410 F.2d 536, (2d Cir., March 24, 1969). A hearing will not be held upon a general, unsubstantiated request to inquire into whether electronic surveillance or wire tapping took place in connection with this case. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Kelley, 395 F.2d 727, 730 (2d Cir. 1968). A defendant has "no right to rummage in government files." Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302, (March 24, 1969).

 The existence of tapes made by Itkin of his conversations with Corallo raises the preliminary question of Corallo's standing to object to their use by the government. Assuming that Itkin was a government informer, or even a government agent, his recordings of conversations with the defendant do

not violate defendant's Fourth Amendment rights. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); United States v. Kaufer, 406 F.2d 550 (2d Cir. 1969). Corallo assumed the risk of Itkin's repeating and even recording the conversations. He does not have standing to object to the use by the government of the recordings. As was stated in Alderman v. United States, 394 U.S. 165, 171, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (March 10, 1969):

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing."

Thus, the one specific basis urged by the defendants for a suppression hearing does not warrant the holding of such hearing.

These motions to suppress are denied.

*Motions for Bills of Particulars*

The motion by defendant De Sapio is disposed of as follows: Items 1b and 1l are consented to. Items 1i, 1f, 1m and 3a are granted to the extent that they are consented to. Items 1a, 1c, 1h, 1k, 2a through 2f, and 3b are denied.

The motion by defendant Fried is disposed of as follows: Item 3k(ii) is granted. Items 3b, 3d(iv), 3k(i), 3l(i) and 3m(i) are consented to. Items 3c (i) and 3d(ii) are granted to the extent consented to. Items 3c(ii) and 3c(iv) are granted to the extent that the government shall furnish the character and nature of the "commerce" and "movement in commerce" referred to in paragraph 2 of the indictment. Items 3a, 3c(iii), 3d(i), 3d(iii), 3f through 3j, 3l (ii), 3l(iii), 3m(ii) and 3m(iii) are denied.

In view of the dismissal of the fourth count of the indictment and the striking of paragraph 4, the particulars sought in relation thereto need not be passed upon.

*Motions for Discovery and Inspection*

■ All defendants move for copies of their grand jury testimony pursuant to Fed.R.Crim.P. 16(a) (3). Except for answering a few preliminary identifying questions, Corallo and Fried asserted their Fifth Amendment privilege to the questions asked of them. There is no testimony to be furnished. De Sapio, however, answered many questions and asserted his privilege to many others. Under the circumstances, the motion by De Sapio is granted and the motions by Fried and Corallo are denied.

The government consents to furnish the material requested by Fried in Items 1(a) and 1(b) pursuant to Fed.R.Crim.P. 16(b).

So ordered.

### ON REARGUMENT

The government moves to reargue that portion of the court's determination which struck the fourth paragraph of Count 1 of the indictment. The motion for reargument is granted and upon reargument the original determination is adhered to.

The indictment set forth three objects of the conspiracy—extortion (18 U.S.C. § 1951), bribery (18 U.S.C. § 1952) and mail fraud (18 U.S.C. § 1341). Each object was set forth in a separate paragraph, and as the original opinion pointed out, the first two objects were clearly and specifically detailed so as to withstand a motion to dismiss independently of each other.

■ Insofar as the third object of the conspiracy is concerned (which is the subject of this motion), such is not the case. However, even if the paragraph could be read to include a clear presentation of the scheme, this paragraph is still insufficient. It fails to allege how the mails were to be used or that they were used. The indictments in the cases cited by the government (Shushan v. United States, 117 F.2d 110, 133 A.L.R.

1040 (5th Cir. 1941), and Morris v. United States, 7 F.2d 785 (8th Cir. 1925)) clearly set this forth. For example, in *Morris* the indictment spoke of "sending out market letters" and "placing and causing to be placed letters, circular letters, units and certificates of interest, advertisements, publications, and market letters in the post office of the United States at El Dorado, Ark., * * *" Id. at 786 and 789.

So ordered.