**UNITED STATES of America**

**v.**

**Anthony CORALLO, Defendant.**

**No. 68 Cr. 1012.**

United States District Court,
S. D. New York.

Feb. 27, 1970.

Whitney N. Seymour, Jr., U. S. Atty. for Southern District of New York, by Paul Rooney and Paul Galvani, Asst. U. S. Attys., for the United States.

Jacob Kossman, Philadelphia, Pa., Barry Ivan Slotnick, New York City, for moving defendant.

OPINION

TYLER, District Judge.

Defendant Corallo was tried on a three count indictment with codefendant Carmine G. DeSapio. The first count charged Corallo with having conspired

to violate sections 1951 and 1952 of Title 18 of the United States Code. 18 U.S.C. § 371. On December 13, 1969 the jury found Corallo not guilty on Count 1. The second and third counts charged Corallo with the substantive offense of having used interstate facilities for the purposes of bribery and extortion. 18 U.S.C. § 1952. The court dismissed the second count at the end of the government's case in chief. The jury convicted Corallo on Count 3.

Corallo now moves to have the conviction on Count 3 vacated on two grounds: first, that on the evidence and the law, he did not have sufficient connection to the interstate telephone call in October of 1967 which was the subject matter of Count 3; second, his conviction should be vacated because it violates the policies of the double jeopardy clause of the Fifth Amendment. I denied the motion to vacate at the end of the hearing held on February 6, 1970 and will not comment further on Corallo's first argument for vacating the conviction. The double jeopardy problem merits further discussion.

As a technical, legal matter, it is easy to dispose of the motion quickly. The test of double jeopardy in this circuit was plainly stated in United States v. Kramer, 289 F.2d 909 (2d Cir.1961):

"Offenses are not the same for purposes of the double jeopardy clause simply because they arise out of the same general course of criminal conduct; they are the 'same' only when 'the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other.' Morey v. Commonwealth, 1871, 108 Mass. 433, 434, quoted with approval in Ex parte Nielsen, 1889, 131 U.S. 176, 187–188, 9 S.Ct. 672, 676, 33 L.Ed. 118 and Gavieres v. United States, 1911, 220 U.S. 338, 342, 31 S. Ct. 421, 55 L.Ed. 489." At 913.

This test was reaffirmed in United States v. Friedland, 391 F.2d 378 (2d Cir.1968).

The earlier case of United States v. Sabella, 272 F.2d 206 (2d Cir.1959), sets out a different formula for double jeopardy which may still have currency in this jurisdiction:

"The defendant may not later be tried again on that same fact situation, where no significant additional fact need be proved, even though he be charged under a different statute." At 212.

It was with those tests in mind that Judge Metzner denied defendant Corallo's pre-trial motion to dismiss the indictment on the grounds that it violated the double jeopardy clause. United States v. DeSapio, 299 F.Supp. 436 (S. D.N.Y.1969). Having reviewed the transcript in Corallo's earlier trial for his part in the Jerome Park Reservoir scheme and the indictment in the present case which dealt with the alleged bribery and extortion of Consolidated Edison Company ("Con Ed"), Judge Metzner denied Corallo's motion while explicitly recognizing that after a full trial the trial judge might come to a different conclusion. 299 F.Supp. at 442.

After the plenary trial, I did not reach the conclusion that double jeopardy, seen in the light of *Kramer* and *Sabella*, was a clear bar to either the conspiracy charge or the substantive charge.

Corallo's prior conviction was on a conspiracy indictment which named James Marcus, Herbert Itkin, Henry Fried, Daniel Motto, Charles Rappaport and S. T. Grand, Inc. as codefendants in a scheme to bribe Marcus, then Commissioner of Water Supply, Gas and Electricity of the City of New York to award a contract without public bidding to Fried and his company, S. T. Grand, Inc., to clean Jerome Park Reservoir. The conspiracy was alleged to have begun on or about January 1, 1966 and continued to December 18, 1967, the date of the filing of the indictment. The last overt act was alleged to have taken place in June, 1967.

In the indictment tried before me, Corallo was named as a codefendant with Marcus, Itkin, Fried and Carmine G. DeSapio in a plan to extort money from Con Ed and bribe Marcus in Con Ed's application to the City of New York for a permit or letter of permission allowing it to rebuild its high line along the right of way of the City's aqueduct through Westchester County. There is evidence that as early as October, 1966, Corallo, Marcus and Itkin were thinking of a scheme which would involve Con Ed, but the final form of the transaction did not start to emerge until August or September, 1967; moreover, the phone call which was the subject of Count 3 did not take place until October, 1967. There was no evidence that the phone call in any way was intended to or did touch on the Jerome Park Reservoir scheme.

Under *Kramer* and *Sabella*, it was proper to send both counts to the jury. The jury found that the government had not proved Corallo's guilt in the conspiracy at issue in this trial beyond a reasonable doubt. In light of the conviction on Count 3 and the double jeopardy defense offered by Corallo at trial, it is highly likely that the jury did not think that the government had proved beyond a reasonable doubt that Corallo had participated in two distinct conspiratorial agreements, one touching the Jerome Park Reservoir and the other Con Ed and its Westchester high line, rather than in a single agreement covering both schemes. I assume, of course, that the verdict is not a legal finding that there was in fact only a single conspiracy. On the third count, to which the present motion is addressed, it is clearly proper to let Corallo's conviction stand under the *Kramer* and *Sabella* interpretation of the double jeopardy clause of the Fifth Amendment.

Corallo presses his argument beyond *Kramer* and *Sabella* by suggesting that in order to follow the policies of the double jeopardy clause the government has a duty to join multiple charges against a defendant at a single trial in order to minimize both his burden of defending criminal charges and his risk of multiple punishment on separate convictions. Reduction of the harassment and burden a defendant would suffer through successive trials and the number of punishments he might serve for criminal activity touching a single entity doubtlessly are among the underlying policies of the double jeopardy clause. Comment, Twice in Jeopardy, 75 Yale L.J. 262, 266 (1965). To further these policies, there have been various suggestions for the grouping of charges at trial, e. g. the joinder of all offenses which are part of the same transaction or series of transactions; joinder of all related offenses; and, in the extreme, the joinder of all offenses of a defendant then known to the prosecutor in a single indictment, with charges reserved for later trial only in the exceptional case. Kirchheimer, The Act, The Offense and Double Jeopardy, 58 Yale L.J. 513 (1949); Comment, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339 (1956); Comment, Twice in Jeopardy, 75 Yale L.J. 262, 292 (1965). The Federal Rules of Criminal Procedure have not gone that far; joinder of offenses and defendants has been left to the discretion of the courts to be exercised with concern for possible prejudice to both the defendant and the government. Fed.R. Crim.P. 8 & 14. The circumstances of this case suggest the wisdom of that combination of rules.

There are three principal ways in which the offenses and defendants involved in the Jerome Park Reservoir and Con Ed cases could have been gathered together for trial. First, all the offenses and all the defendants might have been tried together; second, the defendants might have been taken separately and all of each defendant's alleged offenses tried at a single trial; third, the offenses might have been grouped in what appeared to common sense to be distinct transactions and all the defendants involved in one such transaction

tried together. Any of these basic patterns could have been varied by reserving fewer or more offenses or defendants for later trial. In seeking the appropriate form for trial, the court must strive to give all the defendants the fairest possible trial reconciling the policies of the double jeopardy clause with the thrust of due process.

A single trial of Corallo with Fried, Itkin, Marcus, Motto, Rappaport, S. T. Grand and DeSapio might well have been prejudicial to at least Motto, Rappaport, S. T. Grand and DeSapio. Each of those parties appeared in only one phase of the scheme or schemes developed by Marcus, Itkin, Corallo and, in at least one case, Fried. The problem of spelling out to a jury the shifting membership of the conspiracy or conspiracies involved would produce intricacies which might lead to confusion of a kind best avoided. The defendants involved in only one aspect of the scheme or schemes might justifiably argue that the evidence relating to the other defendants would, in the mind of the jurors, spread over them a patina of guilt which would emanate not from the evidentiary facts but from the fact of association at the defense table. Developments in the Law—Criminal Conspiracy, 72 Harv.L. Rev. 920, 980 (1959). Particularly in light of the real possibility of a finding that more than one conspiracy was involved, the prosecution would have been ill-advised to bring the case forward in such form. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Alternatively, the government could have sought to try the defendants *seriatim*, taking in turn all or part of the charges against each, depending on how forcefully the policy of joinder of offenses for each defendant is established. Dealing with a total of eight defendants in the two cases, this would put a heavy burden on the government and witnesses in terms of time and expense and perhaps ultimately the prosecution of some of those charged. United States v. Cohen, 145 F.2d 82, 95 (2d Cir.1944), cert.

denied 323 U.S. 799, 65 S.Ct. 553, 89 L. Ed. 637 (1945). Even the commentator who argues for the constitutional compulsion of joinder finds this an exception to the general rule on which the government may legitimately prevail. Comment, Twice in Jeopardy, 75 Yale L.J. 262, 293 (1965). Moreover, with defendants as prominent and newsworthy as those involved here, this method could have served to deny to all except the first the speedy, impartial and unprejudiced trial to which each of them is entitled. See generally United States v. Bowe, 360 F.2d 1, 11 (2d Cir.) cert. denied 385 U.S. 961, 87 S.Ct. 401, 17 L. Ed.2d 306 (1966). This, incidentally, is a point well understood by Corallo's counsel.

The government chose here to avoid the pitfalls offered by these two courses and elected to split the trials in terms of what it viewed as two major and separate schemes. Obviously, there is no self-evident, perfect method by which one can divide a series of events into separate and distinct groups. 75 Yale L.J. at 276. In this case, Corallo can argue, as he did at trial, that substantive Count 3 was part of a single web of act, intention, and outcome in which Jerome Park Reservoir and Con Ed are separate objectives of the same grand design. Particularly without testimony from Corallo himself, it is difficult to be positive whether or not that is true. Nonetheless, there are surely indicia that the division of these transactions is not capricious or arbitrary. The active parties in the two deals varied. Fried, Itkin and Marcus are alleged to have been central to both transactions; the position of Corallo within the conspiracy or conspiracies appears to have shifted somewhat from the first to the second phase; Motto and S. T. Grand, Inc. were involved in only the first scheme or phase; and DeSapio was involved only in the second. The nature of the schemes was not identical. Although the willing corruption of Marcus was the lynchpin of both arrangements, the methods varied from simple bribery

in the Jerome Park Reservoir affair to bribery and extortion in the Con Ed scheme. The victims of the schemes varied. The public alone suffered in Jerome Park Reservoir, the public and Con Ed in the high line case. Finally, there is evidence that the negotiations out of which the two schemes grew were separate and distinct in time and place. This certainly does not amount to the mechanically repeated performance which one commentator has suggested as the major indicator of a single transaction. 58 Yale L.J. at 54. In sum, it seems reasonable to treat Jerome Park Reservoir and Con Ed as separate transactions involving separate offenses which may legitimately be divided for trial.

Admittedly in a situation this complex the optimally fair and impartial trial for all the accused must be found by balancing the policy of minimizing the burden of repeated criminal trials for a defendant against the other policies discussed above. The court must set its course past the zones of danger clearly marked out by judicial policy: the multiplication of trials arising out of a single transaction (see Petite v. United States, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) ), the joint trial of unrelated defendants for similar crimes (Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), mass trials of complex and diverse issues which are prejudicial to individual defendants by the confusion they may present to a judge or jury, the trial of the various offenses of a single defendant which may give rise to cumulative rather than separate determination of the charges (Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1954), Note, Joint and Single Trials under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 553 (1965) but see United States v. Lotsch,

102 F.2d 35 (2d Cir.), cert. denied 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939) and United States ex rel. Evans v. Follette, 364 F.2d 305 (2d Cir.1966), cert. denied 385 U.S. 1016, 87 S.Ct. 733, 17 L.Ed.2d 552 (1967) ), or the trial of a variety of defendants which may present the danger of a collective rather than an individual determination of guilt (United States v. Bufalino, 285 F. 2d 408, 417 (2d Cir.1960) ), and the possible prejudice through publicity of seriatim trials, on essentially the same fact situation, of numerous newsworthy defendants.

Bearing these sometimes conflicting demands in mind, it seems impossible to vindicate in every detail all the policies which strive for expression. It is only possible to weigh and balance the burdens and dangers of the possible courses open in a particular instance. The solution here, of the separation of the charges against the defendants on the basis of what may persuasively be argued to be separate transactions or conspiratorial schemes, is a fair one. It avoids what appear to be the greater dangers of any other course.

Finally, Corallo argues that the second trial has exposed him to multiple punishment from which he would be free if the policies of the double jeopardy clause were observed. This argument must fail with the general double jeopardy argument. In fashioning the sentence for the defendant I have borne in mind the failure of the government to prove two separate conspiracies.[1] His conviction here is based on evidence of acts not tested in the first trial and demonstrating another large and significant aspect of criminal activity of a serious nature. I have also borne that in mind in sentencing the defendant. I have, of course, considered all the other usual elements which weigh on the sentencing decision. Thus, the sentence reflects no

1. On February 6, 1970, Corallo was sentenced under Count 3 to four and one-half years in confinement, concurrent with the three year sentence imposed on him by Judge Weinfeld in the Jerome Park Reservoir case.

violation of what I conceive to be the fundamental policies of the double jeopardy clause of the Fifth Amendment.

The motion is denied. It is so ordered.